[No. S167148. Jan. 27, 2011.]

STEVEN DAVID CATLIN, Petitioner, v.
THE SUPERIOR COURT OF KERN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

302

## COUNSEL

J. Wilder Lee, under appointment by the Supreme Court, for Petitioner.

Cristina Bordé for Habeas Corpus Resource Center as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, George Hendrickson, Ward A. Campbell and Stephen G. Herndon, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**KENNARD, Acting C. J.**—After petitioner Steven David Catlin was sentenced to death, the Legislature enacted Penal Code section 1054.9.[1] That statute permits a defendant who has been sentenced either to death or to life imprisonment without parole to obtain discovery of "materials . . . to which the . . . defendant would have been entitled at time of trial" (§ 1054.9, subd. (b)) if the defendant shows that good faith efforts to obtain such materials from trial counsel were unsuccessful. Four and one-half years after the law's passage, petitioner sought discovery under its provisions. The trial court denied the request as untimely, because it had not been made within a "reasonable time" after section 1054.9's enactment. Petitioner filed a writ petition in the Court of Appeal challenging the trial court's denial order; the Court of Appeal upheld the order.

At issue here is whether a trial court may deny as untimely a section 1054.9 motion for postconviction discovery. Our answer is "no," for these reasons: The statute lacks any language allowing a trial court to deny such a motion as

---

[1] All statutory citations are to the Penal Code.

untimely, and the statute's legislative history shows that the Legislature specifically chose not to impose a timeliness limitation.

## I

In 1986, in Monterey County Superior Court, petitioner was convicted of murdering Glenna Catlin, one of his ex-wives; he was sentenced to life imprisonment without the possibility of parole. In 1988, the Court of Appeal affirmed the judgment. (*People v. Catlin* (June 13, 1988, H002078) [nonpub. opn.].) In 1990, in Kern County Superior Court, petitioner was convicted of murdering Martha Catlin (his mother) and Joyce Catlin (another ex-wife). For Martha's murder, petitioner was sentenced to death; for Joyce's murder, he was sentenced to life imprisonment without the possibility of parole. In 2000, while petitioner's appeal from the Kern County Superior Court judgment was pending before us, he petitioned us for a writ of habeas corpus, challenging the judgment. In 2001, we resolved the appeal by affirming the judgment in its entirety. (*People v. Catlin* (2001) 26 Cal.4th 81 [109 Cal.Rptr.2d 31, 26 P.3d 357].) At that time, the habeas corpus petition remained pending.

In 2002, the Legislature enacted section 1054.9. That statute permits a defendant sentenced to death or to life imprisonment without possibility of parole to obtain postconviction discovery from the prosecution of any materials that the defendant would have been entitled to receive at the time of trial, upon a showing that good faith efforts to obtain those materials from trial counsel were unsuccessful.

Section 1054.9 became effective on January 1, 2003. Four and one-half years later, in August 2007, petitioner moved in Kern County Superior Court for postconviction discovery. Pertaining to his three murder convictions, he sought materials in the possession of the prosecution and law enforcement authorities to which he would have been entitled at the time of trial. In support of the motion, petitioner submitted a declaration from his current habeas corpus counsel, J. Wilder Lee, stating that Lee, as well as Attorney Horace Freedman (petitioner's counsel on appeal) and Attorney Jeffrey Schwartz (petitioner's initial habeas corpus counsel) had "made diligent and repeated informal attempts to obtain the discovery materials requested" from "trial counsel, counsel's investigators and defense experts," and that they had reviewed "trial counsel's files and the files of other defense team members."

The trial court denied the motion as untimely because petitioner had not justified the four-and-one-half-year delay between the effective date of section 1054.9 and petitioner's filing of the discovery motion. In September 2007,

petitioner sought a writ of mandate from the Court of Appeal directing the trial court to grant his postconviction discovery motion. Later that month, while the mandate petition was pending in the Court of Appeal, we denied the 2000 habeas corpus petition. The next month, the Court of Appeal summarily denied the mandate petition. Petitioner sought review in this court, and we transferred the matter back to the Court of Appeal for issuance of an alternative writ.

The Court of Appeal, after briefing and oral argument, again denied the mandate petition, this time in a written opinion. The two-justice majority relied on a footnote in our decision in *In re Steele* (2004) 32 Cal.4th 682 [10 Cal.Rptr.3d 536, 85 P.3d 444] (*Steele*), which stated that an inmate who seeks postconviction discovery under section 1054.9 must do so within a "reasonable time." (*Steele, supra,* at pp. 692–693, fn. 2.) The Court of Appeal majority agreed with the Attorney General that the footnote's language supported the trial court's denial of the discovery motion for being untimely. The dissenting justice viewed the *Steele* footnote as ambiguous, and pointed out that section 1054.9 lacked any timeliness requirement. Petitioner sought review in this court, and we granted review to clarify the matter.

## II

To determine whether a section 1054.9 postconviction discovery motion may be denied as untimely, we must construe the statutory language.

■ "The basic rules of statutory construction are well established. 'When construing a statute, a court seeks to determine and give effect to the intent of the enacting legislative body.' [Citation.] ' "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context." [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls.' [Citation.] But if the statutory language may reasonably be given more than one interpretation, ' " 'courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.' " ' " (*People v. King* (2006) 38 Cal.4th 617, 622 [42 Cal.Rptr.3d 743, 133 P.3d 636]; accord, *Klein v. United States of America* (2010) 50 Cal.4th 68, 77 [112 Cal.Rptr.3d 722, 235 P.3d 42].)

As pertinent here, section 1054.9 provides: "(a) Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and *on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall . . . order that the defendant be provided reasonable access to any of the materials described in subdivision (b).* [¶] (b) For purposes of this section, 'discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial." (Italics added.)

█ Section 1054.9 is silent about untimely motions. It simply says that "on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall . . . order" discovery. The language could not be plainer: If that showing is made, the defendant is entitled to discovery.

Even if ambiguity could be perceived in the statutory language, section 1054.9's legislative history supports our conclusion that a trial court may not deny as untimely a postconviction discovery motion brought under section 1054.9. As originally introduced in February 2002, Senate Bill No. 1391 (2001–2002 Reg. Sess.), which proposed creating section 1054.9, made its discovery provisions available to anyone convicted of a felony. The Attorney General opposed the bill. One legislative committee analysis described that opposition in these words: "The Attorney General contends that *with no time limitations on when a motion for discovery could be made,* it would impose an unreasonable burden on law enforcement and prosecutors' offices to maintain files and all types of evidence long after defendants had been discharged from custody." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001–2002 Reg. Sess.) as amended Apr. 10, 2002, p. 4, italics added; see also Assem. Com. on Appropriations, Analysis of Sen. Bill No. 1391 (2001–2002 Reg. Sess.) as amended Apr. 10, 2002, p. 2.)

In response, the proposed legislation was amended to narrow its scope. As amended, the proposed legislation no longer covered anyone convicted of a felony, but only those inmates sentenced to either death or life imprisonment without possibility of parole. Because such inmates are never discharged from custody, law enforcement and prosecutors' offices would not be burdened with "maintain[ing] files and all types of evidence long after defendants had been discharged from custody" (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001–2002 Reg. Sess.), *supra*, p. 4), which

was the reason for the Attorney General's objection to the original bill's lack of time limitations for discovery. Tellingly, the amended bill did not alter the original bill's lack of time limitations. Three days after the bill's amendment, the Attorney General withdrew his opposition to the bill. (See Deputy Director Les Kleinberg, Atty. Gen. Office of Legis. Affairs, letter to Sen. John Burton, Aug. 26, 2002 [with copies to Sen. and Assem. Coms. on Public Safety].) The Legislature then passed the bill, which added section 1054.9 to the Penal Code. (Stats. 2002, ch. 1105, § 1, p. 7100.)

This legislative history thus shows that before enacting section 1054.9, the Legislature knew of the Attorney General's expressed concern about the proposed legislation's lack of time limits for postconviction discovery but it chose not to include such limits.

The Attorney General now insists, however, that a section 1054.9 postconviction discovery motion may be denied as untimely. In support, he points to footnote 2 in *Steele, supra,* 32 Cal.4th 682, 692. In *Steele,* we held that a section 1054.9 discovery motion should generally be filed in the trial court in which the conviction occurred, and that the motion may be filed either by an inmate who has already filed a habeas corpus petition, or by an inmate who is preparing to file such a petition. (*Steele, supra,* at p. 691.) Footnote 2 discussed the timeliness question: "Section 1054.9 provides no time limits for making the discovery motion or complying with any discovery order. *We believe the statute implies that the motion,* any petition challenging the trial court's ruling, and compliance with a discovery order *must* all *be done within a reasonable time period.* We will consider any unreasonable delay in seeking discovery under this section in determining whether the underlying habeas corpus petition is timely. (See generally *In re Robbins* (1998) 18 Cal.4th 770 [77 Cal.Rptr.2d 153, 959 P.2d 311]; *In re Clark* (1993) 5 Cal.4th 750 [21 Cal.Rptr.2d 509, 855 P.2d 729].)" (*Steele, supra,* at p. 692, fn. 2, italics added.)

The Attorney General construes the above italicized language from the *Steele* footnote as stating that when a section 1054.9 postconviction discovery motion is not brought "within a reasonable time" (*Steele, supra,* 32 Cal.4th at p. 692, fn. 2), the court in which the motion is brought may deny it as untimely. The Court of Appeal majority accepted this view, which seems plausible when the footnote's italicized language is considered in isolation. Viewed in context, however, the footnote merely states that discovery must be sought "within a reasonable time" and that when a petitioner files an *untimely* discovery motion, the court in which the inmate files a habeas corpus petition based on the information obtained through discovery should

consider the delay "in determining whether the underlying habeas corpus petition is timely." (*Ibid.*) The footnote goes on to say that this court will "consider the date of compliance with the [discovery] order in considering the timeliness of any petition for writ of habeas corpus that might be filed in light of the discovery." (*Ibid.*)

The *Steele* footnote's observation simply reflects our well-established rule that habeas corpus petitions must be prepared and filed "without substantial delay." (*In re Robbins, supra,* 18 Cal.4th at p. 787.) Otherwise stated, *Steele's* footnote 2 simply explains that when, because of delay in seeking postconviction discovery, an inmate does not file a habeas corpus petition within a reasonable time, *the petition* may be denied as untimely, assuming no exception to the habeas corpus timeliness requirement applies. Indeed, by addressing the situation in which a habeas corpus petition is based on information obtained through an unreasonably delayed postconviction discovery request, the *Steele* footnote necessarily implies that trial courts will not deny such requests as untimely, because a petitioner cannot obtain such information when the discovery request is denied.

As we noted earlier, the text of section 1054.9 does not contain a timeliness requirement. At least two possible reasons come to mind why the Legislature chose not to allow a trial court to deny as untimely a section 1054.9 postconviction discovery motion. First, a petitioner who files an *untimely habeas corpus petition* may nonetheless be entitled to relief upon a showing "that a *fundamental* miscarriage of justice occurred as a result of the proceedings leading to conviction and/or sentence." (*In re Clark, supra,* 5 Cal.4th at p. 797.) Thus, as long as the habeas corpus petitioner satisfies this test, an unreasonable delay in seeking section 1054.9 postconviction discovery will not bar relief. The possibility of such postconviction relief may have persuaded the Legislature that the consequences of an unreasonably delayed postconviction discovery motion should be determined as part of a court's evaluation of the petitioner's habeas corpus petition, and that a postconviction discovery motion (which seeks information that, the defendant hopes, will show that the defendant is entitled to habeas corpus relief) should not be denied as untimely. Second, the Legislature may have seen it as a waste of time and resources to have the motion's timeliness litigated *twice*: once when the discovery motion itself is made, and again when the habeas corpus petition is adjudicated.

The Court of Appeal majority here expressed its concern that precluding a trial court's denial of a postconviction discovery motion as untimely "would result in mischief," because "a defendant could file numerous section 1054.9

motions over a period of years and the trial court would be without power to deny the motions on the grounds that he or she had waited too long." If this reflects a fear that petitioners will bombard the courts with *successive or repeated* discovery motions, that fear is not a reason to deny such motions as *untimely*, as occurred here. The question whether a court may deny multiple discovery motions as successive is not before us, and we therefore do not address it. With respect to any concern that petitioners would use postconviction discovery motions for the purpose of delay, we observe that delay will injure the *petitioner*: The longer the delay, the greater the likelihood that the postconviction discovery items sought will no longer exist, and the greater the likelihood that any ensuing habeas corpus petition will be denied as untimely.[2] Moreover, to ensure that inmates sentenced to death will not use postconviction discovery motions under section 1054.9 for purposes of delay,[3] this court will not, as a general rule, postpone consideration of a habeas corpus petition merely because the petitioner's postconviction discovery motion is pending in the trial court. Indeed, as mentioned earlier (see p. 303, *ante*), in this very case we denied petitioner's habeas corpus petition when his writ petition challenging the trial court's denial of his motion for postconviction discovery was still pending in the Court of Appeal.

■ We stress that an inmate sentenced to death cannot use an untimely section 1054.9 postconviction discovery motion as a procedural ploy to delay the execution. "[A] stay of execution is an equitable remedy" that "is not available as a matter of right." (*Hill v. McDonough* (2006) 547 U.S. 573, 584 [165 L.Ed.2d 44, 126 S.Ct. 2096].) "A court considering a stay must . . . apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.' " (*Ibid.*) Thus, the pendency of a last-minute discovery request under section 1054.9, with or without a concurrently filed habeas corpus petition,[4] will not—absent a compelling showing of good cause—justify the issuance of a stay of execution, nor should it justify postponement of the setting of an execution date.

---

[2] If an order to show cause ultimately issues, the prosecution too may suffer injury caused by unavailable witnesses or lost evidence.

[3] Because inmates sentenced to life imprisonment without possibility of parole are imprisoned and are seeking release, they have no incentive to engage in delaying tactics that would prolong their imprisonment. By contrast, for inmates sentenced to death, delay may postpone execution. (See *In re Clark, supra*, 5 Cal.4th at p. 796, fn. 31 ["the state has a compelling need for rules that require timely presentation of challenges to the judgments in capital cases where petitioners, unlike prisoners who are not under sentence of death, have a strong incentive for delay"].)

[4] Although we do not decide the issue here, it is doubtful that the filing of a section 1054.9 postconviction discovery motion would, in the absence of a concurrently filed habeas corpus petition, empower a trial court or an appellate court to issue a stay of execution.

## DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Baxter, J., Werdegar, J., Chin, J., Moreno, J., Corrigan, J., and George, J.,[*] concurred.

---

[*]Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.