KENNARD, J., Concurring.—Robbery
is statutorily defined as “the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.” (Pen. Code, §211; further undesignated statutory references are to the Penal Code.) Here, defendant Paul D. Anderson was charged not only with the felony of robbery but also with first degree felony murder because a killing occurred during the robbery. (§ 189.) To establish first degree felony murder, the prosecution had to prove defendant’s commission of the robbery. Defendant claimed that his use of force in taking the victim’s property was *1000 “an accident,” but he did not ask for a jury instruction on that theory. The jury found defendant guilty as charged.
On appeal, defendant faulted the trial court for not instructing the jury, without request, on the defense theory of “accident,” that is, if the jury were to conclude that defendant’s use of force in taking the victim’s property was not intentional, it would have to acquit him of robbery and of felony murder based on robbery. The Court of Appeal agreed. It held that robbery requires “a purposeful or willful act involving a general intént to use force” (italics omitted); thus, if defendant’s use of force was truly accidental, he lacked the general intent that in the Court of Appeal’s view is required for robbery. The Court of Appeal also held that the trial court erred in not so instructing the jury even though the defense had not requested such an instruction. (This latter issue was the basis for this court’s grant of review.)
The majority reverses the Court of Appeal. The majority holds, and I agree, that a claim of an act being an “accident” is a defense that, at most, negates a mental element of an offense, and thus is not the type of defense warranting a jury instruction by the trial court without a request by the defendant. (Maj. opn., ante, at pp. 996-998.) This is true so long as the trial court has given “complete and accurate instructions on the requisite mental element of the offense.” (Id., at p. 998.)
What then is the “requisite mental element” here? According to the Court of Appeal, it is the general intent to use force in taking another’s property. That court concluded that the use of such force in taking property from the possession of another is the “ ‘central element’ ” of robbery, and that therefore the crime must require “a purposeful or willful act involving a general intent to use force or fear to initially take the property or thereafter retain the stolen property.” The majority disagrees, stating that a general intent to use force is not an element of robbery. (Maj. opn., ante, at pp. 994—996.) (We did not grant review to decide this issue but later asked the parties to brief it.)
The Court of Appeal’s reasoned determination that robbery requires a general intent to use force in taking property from another person’s possession cannot be dismissed lightly, as the majority seems to do. But I see no need to decide that issue in this case because in my view the trial court’s failure to instruct the jury on general intent could not have prejudiced defendant.
I
As relevant here, robbery occurs when a person uses force to take property from another’s possession or immediate presence. (§211; People v. Bolden *1001 (2002) 29 Cal.4th 515, 556 [127 Cal.Rptr.2d 802, 58 P.3d 931].) The use of force need not be contemporaneous with the taking, however; a robbery also occurs if, after taking the property, the taker exerts force when the owner tries to regain possession. (People v. Gomez (2008) 43 Cal.4th 249, 255-256 [74 Cal.Rptr.3d 123, 179 P.3d 917]; People v. Estes (1983) 147 Cal.App.3d 23, 28 [194 Cal.Rptr. 909] [a robbery occurred when the defendant shoplifted from a store and then, when confronted by a security guard who demanded return of the stolen property, pulled a knife].) The use of force that followed the forceless taking in Estes is similar to what occurred here.
Defendant, without permission, took a car belonging to 19-year-old Pamela Thompson from its parking stall in the carport of a large apartment complex, and then drove it toward the exit’s security gate. Meanwhile, Thompson had entered the carport and discovered her car missing. Thompson, using her cellular phone, told her mother that someone had taken her car. As Thompson, still on the phone with her mother, headed toward the complex’s exit gate, she exclaimed: “Oh, my God. Here comes my car real fast.” She then yelled at the driver to stop. At this point, someone entering the apartment complex activated the security gate, which led defendant to accelerate the car so he could clear the gate before it closed. In the process, defendant ran over Thompson, killing her.
At trial, defendant admitted stealing Thompson’s car. But he claimed that he had not seen Thompson (who was standing some 10 feet in front of the car) until seconds before the collision, that he swerved the car to avoid hitting her, and that his intent in speeding out the security gate was not to use force against Thompson but to leave the apartment complex as fast as he could.
The Court of Appeal held that, in light of defendant’s testimony, the trial court had a duty, without defense request, to instruct the jury that defendant could not be guilty of robbery if his use of force against Thompson was an accident. In other words, if defendant lacked a general intent to use force against Thompson when getting away with her car, he did not commit a robbery. This court disagrees. It holds that a trial court need not instruct on the defense of accident on its own initiative, so long as “the jury received complete and accurate instructions on the requisite mental element of the [charged] offense . . . .” (Maj. opn., ante, at p. 998.) I agree. But the majority further holds that the crime of robbery does not require any intent to use force in taking another’s property. I am not convinced. As discussed in part II below, leading criminal law treatises describe robbery as a combination of two distinct crimes: theft and assault. If that is correct, then it follows that proof of a robbery would require proof of all of the elements of the crimes of theft and assault; the latter requires a general intent to use force. (People v. Colantuono (1994) 7 Cal.4th 206, 218 [26 Cal.Rptr.2d 908, 865 P.2d 704] *1002 (Colantuono); see also People v. Williams (2001) 26 Cal.4th 779, 784 [111 Cal.Rptr.2d 114, 29 P.3d 197] (Williams).)
II
Long before the California Legislature in 1872 codified the crime of robbery in Penal Code section 211, the common law defined robbery as a “[larceny] from the person” committed “by open and violent assault.” (4 Blackstone, Commentaries 241.) Rather recent editions of leading criminal law treatises have embraced that common law view. (Perkins & Boyce, Criminal Law (3d ed. 1982) Offense Against Property, § 2, p. 350 [describing robbery as a “compound offense” made up of both theft and assault]; 4 Wharton’s Criminal Law (15th ed. 1996) § 454, p. 5 [stating that robbery typically “consists of a battery plus larceny or an assault plus larceny”]; 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Property, § 86, p. 115 [describing robbery as a “combination of assault and larceny”].)
Did the common law definition of robbery as consisting of both assault and theft find its way into California’s robbery statute when it was enacted in 1872? If so, all the elements of those two distinct crimes would be included within the crime of robbery. Robbery includes the mental element necessary to prove theft, the specific intent to permanently deprive the owner of the property. (People v. Bacon (2010) 50 Cal.4th 1082, 1117 [116 Cal.Rptr.3d 723, 240 P.3d 204]; People v. Montoya (2004) 33 Cal.4th 1031, 1037 [16 Cal.Rptr.3d 902, 94 P.3d 1098].) No one disputes this here. With respect to the crime of assault (§ 240), it requires a general intent “to commit an act likely to result in . . . physical force,” that is, “a general intent to attempt to commit the violence.” (Colantuono, supra, 7 Cal.4th 206, 218; see also Williams, supra, 26 Cal.4th 779, 782 [“clarifying]” the Colantuono rule as requiring “actual knowledge of the facts sufficient to establish that the defendant’s act by its nature will probably and directly result in injury to another”].) This general intent for assault, the Court of Appeal here held, was also required to prove the use of force in a robbery. As the Court of Appeal reasoned, because the use of force in taking property from another’s possession is the “central element” of robbery (People v. Ramos (1982) 30 Cal.3d 553, 589 [180 Cal.Rptr. 266, 639 P.2d 908]), it follows that robbery “requires a purposeful or willful act involving a general intent to use force or fear to initially take property or thereafter retain the stolen property.”
Whenever a court needs to construe the meaning of statutory language, it must determine and give effect to the intent of the Legislature. (Catlin v. Superior Court (2011) 51 Cal.4th 300, 304 [120 Cal.Rptr.3d 135, 245 P.3d 860]; Klein v. United States of America (2010) 50 Cal.4th 68, 77 [112 Cal.Rptr.3d 722, 235 P.3d 42].) Here, the Court of Appeal, in concluding that *1003 robbery requires a general intent to use force in taking another’s property, did not consider whether that was the Legislature’s view when in 1872 it enacted the robbery statute.
Likewise, the majority in holding that robbery does not require any intent to use force, does not consider whether that was the 1872 Legislature’s view. Instead, in arriving at that holding, the majority discusses several cases relied on by defendant (maj. opn., ante, at pp. 994-995), decides they do not hold that robbery includes any intent to use force (id., at p. 995 [“no authority cited to us provides positive support for defendant’s argument”]), and concludes that therefore the opposite must be true, namely, that robbery does not require an intent to use force (id., at pp. 995-996).
The task of ascertaining the 1872 Legislature’s intent could well have been daunting. (See, e.g., People v. Evans (2008) 44 Cal.4th 590, 596-597 [80 Cal.Rptr.3d 174, 187 P.3d 1010] [consulting 19th century British and American treatises to determine the 1872 Legislature’s intent in enacting Pen. Code, § 1200, pertaining to a defendant’s right to allocution].) But it is called for in light of the divergent views of the Court of Appeal and of this court’s majority on the issue of intent to use force in obtaining or maintaining another person’s property.
Under my approach—assuming that, as the Court of Appeal held, the trial court erred in not instructing without a defense request on general intent to use force, I perceive no prejudice to defendant—a determination of legislative intent in enacting the robbery statute is not necessary. Below, I discuss this.
Ill
As noted earlier on page 992, the majority’s determination (with which I agree) that a trial court need not on its own initiative instruct the jury on a defense of “accident” hinges on the trial court having given proper instructions on the requisite intent for the underlying offense. (Maj. opn., ante, at p. 998.)
Here, assuming, as the Court of Appeal held, that the crime of robbery requires a general intent to use force in taking another’s property, the jury would not have been able to determine whether defendant had that intent, because the trial court failed to tell the jury (1) that robbery requires such intent, or (2) that if defendant’s use of force was accidental, this would negate the requisite intent.
Instructional error that withholds an element of an offense from the jury is of federal constitutional dimension. (Neder v. United States (1999) 527 U.S. 1, *1004 15 [144 L.Ed.2d 35, 119 S.Ct. 1827].) In that situation, the inquiry is whether “ ‘beyond a reasonable doubt’ ” the error “ ‘did not contribute to the verdict.’ ” (Ibid.; see also Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].) This standard is satisfied when it is “clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.” (Neder, at p. 18.)
Here, defendant could not have been prejudiced by any error of the trial court in not submitting to the jury the issue of general intent to use force, which according to the Court of Appeal is an element of robbery. Defendant testified that he noticed Thompson’s presence some 10 feet ahead as he was driving her car toward the closing security gate at 25 to 30 miles per hour. By his own admission, defendant never tried to stop the car but only “swerved” in an effort to avoid Thompson, who was trying to stop him from driving away in her car. Defendant’s conduct was sufficient to establish a general intent to attempt to “commit the violence,” that is, to use the force necessary to commit the harm, the standard that a majority of this court articulated in Colantuono, supra, 1 Cal.4th at page 218, as the mental element for the crime of assault. (See p. 993, ante, regarding the view that robbery is comprised of both theft and assault.) And defendant’s conduct likewise satisfies the general-intent-for-assault standard described by the majority in Williams, supra, 26 Cal.4th at page 790, that is, “an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.”[1] Accordingly, if a rational jury that accepted defendant’s version of the facts was instructed that the general intent required for assault is an element of robbery (an instruction that the Court of Appeal viewed as being required here), that jury would conclude that defendant committed the felony of robbery as well as a robbery murder when he ran over and killed car owner Thompson in order to get away in the car he had stolen from her. Hence, the trial court’s failure to submit to the jury the issue of general intent to use force against Thompson could not, beyond a reasonable doubt, have contributed to the verdict. (Neder v. United States, supra, 527 U.S. at p. 15.)
*1005 On this basis, I conclude that the Court of Appeal erred in reversing defendant’s convictions, and I concur in the majority’s reversal of the Court of Appeal.

 disagreed with the majority of the court in both Colantuono and Williams. My separate opinion in Colantuono concluded that assault (§ 240) requires a more stringent form of intent, that is, the specific intent to commit a violent injury against another. (See Colantuono, supra, 1 Cal.4th at pp. 225-228 (cone. & dis. opn. of Kennard, J.).) My separate opinion in Williams concluded that the majority there, in describing the mental element for assault, had reduced the required mental state from general intent to criminal negligence and thus was “not faithful” to the majority opinion in Colantuono. (Williams, supra, 26 Cal.4th at p. 795 (dis. opn. of Kennard, J.); see id., at pp. 791-797 (dis. opn. of Kennard, J.).)