Filed 4/18/14  In re J.D. CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.D., a Person Coming Under the Juvenile Court Law. | H039960 (Monterey County Super. Ct. No. J47224) |
| THE PEOPLE, Plaintiff and Respondent, v. J.D., Defendant and Appellant. | |

On appeal, minor J.D. challenges the juvenile court's order committing him to the California Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF) on the most recently sustained juvenile wardship petition.  That petition alleged that, on or about April 28, 2013, minor had committed attempted murder (Pen. Code, §§ 187, 664).  (See Welf. & Inst. Code, §§ 602, subd. (a), 725, subd. (b), 800.)[1]  Minor fully admitted that allegation and the additional allegations that he had committed the offense for the benefit of, at the direction of, and in association with a criminal street

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

1

gang (Pen. Code, § 186.22, subd. (b)(1)(C)) and, in the commission of the offense, he or another principal intentionally and personally discharged a firearm (Pen. Code, § 123022.53, subds. (c) & (e)(1)). Attempted murder is a section 707, subdivision (b), offense. (See § 707, subd. (b)(12).) Minor had previously admitted a prior petition's allegations that, on or about May 15, 2013, he committed four specified offenses, none of which were section 707, subdivision (b), offenses. Thus, the attempted murder was not minor's most recent offense.

Section 733 provides in pertinent part: "A ward of the juvenile court who meets any condition described below shall not be committed to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities: . . . [¶] (c) The ward has been or is adjudged a ward of the court pursuant to Section 602, and the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707 or subdivision (c) of Section 290.008 of the Penal Code" (hereinafter section 733(c)).

Minor now contends that (1) "the most recently committed offense rather than the most recent petition filed determines whether a ward may be committed to" the DJF and (2) the juvenile court abused its discretion by ordering him committed to the DJF. In light of the Supreme Court's recent decision in *In re D.B.* (April 3, 2014, S207165) ___ Cal.4th ___ [2014 Cal. LEXIS 2468] (*D.B.*), we conclude that minor was ineligible for commitment to the DJF and reverse.

*I*

*Procedural History*

*Previous Petition*

A juvenile wardship petition, filed May 17, 2013, alleged that, on or about May 15, 2013, minor committed four crimes: (1) first degree residential burglary (Pen. Code, § 459), (2) misdemeanor vehicle tampering (Veh. Code, § 10852),

2

(3) misdemeanor attempted vehicle tampering (Veh. Code, § 10852; Pen. Code, § 664), and (4) misdemeanor resisting an officer (Pen. Code, § 148, subd. (a)(1)).

On May 28, 2013, minor waived his trial rights and admitted the violations alleged in the foregoing petition.

The probation report for the disposition hearing on the May 17, 2013 petition indicated that the police had responded to a report of a residential burglary in progress. A witness observed two teens, one later identified as J.D., unsuccessfully try to open a garage door and then proceed to another address, where the other teen began to pull the mesh screen out of the garage window and J.D. began to climb through the window. The witness told the teens that he was calling the police; they began to walk away "while yelling profanities and displaying gang signs." A neighbor arrived home in his vehicle and the witness and the neighbor followed the teens. They observed J.D. and the other teen "enter into a parked vehicle and look through the vehicle's contents." The neighbor then witnessed them exit the vehicle and unsuccessfully try to enter a second vehicle.

According to the probation report, the police arrived, located two teens, who were later identified as minor and a 15-year-old male named Raul, walking away from the area. An officer directed them to stop and sit on the ground. Raul attempted to flee while the officer was attempting to handcuff minor. While the officer "detained Raul," minor "attempted to stand up"; the officer returned to minor and detained him. The officer smelled alcohol emanating from both minor and Raul and they both admitted they had been drinking alcohol earlier in the day.

The probation report related that, when minor was interviewed at juvenile hall, he acknowledged going through an open vehicle. Minor stated that he had "admitted to the charges in order to resolve his case and be released from custody" but denied "any involvement in the residential burglary."

The probation report stated that minor acknowledged that a few of his friends associated with "Northerners." During the 2012-2013 school year, minor had "received

3

two school write-ups . . . for 'flashing gang signs' and for spelling 'XIV' with 'letter stickers' on his worksheet."

It indicated that minor had been referred to probation in 2012 for his possession of a dirk or dagger. He was "placed on Intake Diversion and . . . assigned to complete the COPS-Aggressive Offender class." Minor "failed to attend the class and the case was closed noncompl[ia]nt on June 14, 2012."

On June 12, 2013, the court declared minor to be a ward of the court. It placed him under the supervision of a probation officer under "Full Gang Terms and Conditions of Probation" as specified. Nothing in the record suggests that, at the time of disposition of this previous petition, the D.A. or the court had any inkling that minor had also committed, a short time before the admitted crimes, an attempted murder for the benefit of a gang.

*Current Petition*

A juvenile wardship petition, filed June 19, 2013, alleged that, on or about April 28, 2013 (shortly before the previously admitted crimes), minor attempted to commit the crime of willful, deliberate, and premeditated murder (Pen. Code, §§ 187, subd. (a), 664). It further alleged that the offense was committed for the benefit of, at the direction of, and in association with a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)(C)). It alleged that minor was a principal and, in the commission of the offense, at least one principal personally and intentionally discharged a firearm (Pen. Code, § 12022.53, subds. (c) & (e)(1)). It contained notice of the court's authority to rely upon previous sustained petitions to aggregate the maximum period of confinement and petitioner's intent to move for such aggregation.

On July 12, 2013, minor admitted the allegations of the petition pursuant to an agreement with the district attorney (D.A.) that the D.A. would not request a commitment to DJF. The juvenile court found the allegations were true as alleged.

4

On July 26, 2013, the juvenile court determined that DJF had programs that would probably benefit minor, the best interests and welfare of minor required a commitment to the DJF, and less restrictive alternatives were ineffective and inappropriate. It also found that protection of society required a secured facility. The court ordered him continued as a ward of the court and committed him to the DJF.

A formal order of commitment was filed on July 30, 2013. It states: "The mental and physical condition and qualifications of this youth render it probable that the youth will benefit from the reformatory . . . discipline or other treatment provided by the Division of Juvenile Facilities."

## II

### *Application of Section 733*

Minor contends that "in light of the plain terms of the statute, and consistent with its intent and purpose, . . . section 733 prohibited his placement to [the DJF] where his most recently committed offenses did not qualify for such commitment . . . ." " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' (*People v. Murphy* (2001) 25 Cal.4th 136, 142 . . . .) 'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent.' (*People v. Watson* (2007) 42 Cal.4th 822, 828 . . . ; accord, *Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304 . . . .) The plain meaning controls if there is no ambiguity in the statutory language. (*People v. King* (2006) 38 Cal.4th 617, 622 . . . .) " (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.) But courts " 'will not give statutory language a literal meaning if doing so would result in absurd consequences that the Legislature could not have intended. [Citations.]' (*In re J.W.* (2002) 29 Cal.4th 200, 210 . . . .)" (*D.B.*, *supra*, ___ Cal.4th at p. ___ [p. 5].)

5

Minor relies on *V.C. v. Superior Court* (2009) 173 Cal.App.4th 1455, which was disapproved in *In re Greg F.* (2012) 55 Cal.4th 393, 415 (*Greg F.*), to the extent it held that "section 733(c) must always override the juvenile court's ability to dismiss a delinquency petition under section 782." *Greg F.* stated that "[h]aving granted the minor leniency by placing [a minor] on probation for a DJF-qualifying offense, the court retains discretion to impose a DJF commitment if the minor violates that probation" by committing a new offense. (*Greg F.*, *supra*, 55 Cal.4th at p. 408.) It concluded that a juvenile court could dismiss a subsequent section 602 petition pursuant to section 782 to avoid the bar of section 733(c) where "the juvenile court, in its discretion, finds that the dismissal is required by the interests of justice and the welfare of the minor." (*Id*. at p. 420.) The court raised but did not resolve the potential problem resulting where a minor "commits a string of violent acts" and "the crime spree happened to end with a nonqualifying offense." (*Id*. at p. 412.)

Very recently, in *D.B.*, *supra*, ___ Cal.4th ___, the Supreme Court held that a minor cannot be committed to the DJF where a section 602 petition "alleges a minor has committed a series of criminal offenses, including serious or violent offenses" and "the last offense in the series is nonviolent." (*Id*. at p. ___ [p. 1].) The court stated: "The statute premises DJF eligibility on the nature of a minor's 'most recent offense' alleged in any section 602 petition and admitted or found true by the court. When a law is unambiguous, we must conclude the Legislature meant what it said even if the outcome strikes us as unwise or disagreeable. The plain language of section 733(c) mandates that a minor may not be committed to DJF unless the most recently committed offense that is alleged in any wardship petition, then admitted or found true, is listed in section 707(b) or Penal Code section 290.008(c)." (*Id*. at p. ___ [p. 2].)

The court explained: "The statute premises DJF eligibility on the nature of '*the most recent offense* alleged in *any petition* and admitted or found to be true by the court.' (§ 733(c), italics added.) Plainly, this language refers to the last offense that was

6

adjudicated to have been committed by the minor. A minor can be committed to DJF only if this particular offense is listed in section 707(b) or Penal Code section 290.008(c)." (*Id*. at p. ___ [p. 8].)

In *D.B.*, the Supreme Court observed that "[p]remising DJF eligibility on the nature of the most recently committed offense could thus reward a minor for committing *more* crimes. (*Id*. at p. ___ [p. 10].) It recognized that "because section 733(c) examines only the last offense committed, the statute will sometimes require that currently violent offenders and sex offenders be placed in local settings with juveniles whose offenses are far less serious." (*Id*. at p. ___ [p. 10].) The court acknowledged that "[t]hese potential consequences are certainly troubling." (*Id*. at p. ___ [p. 10].)

Nevertheless, the Supreme Court determined that the consequences were not "so absurd that we must override the plain meaning of the statutory language." (*Id*. at p. ___ [p. 11].) It explained: "To justify departing from a literal reading of a clearly worded statute, the results produced must be so unreasonable the Legislature could not have intended them. (See *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 136.) We cannot so conclude here. Section 733(c) was enacted as part of comprehensive realignment legislation. (*Greg F*., *supra*, 55 Cal.4th at p. 409.) The Legislature's primary purpose in enacting the statute was to reduce the number of juvenile offenders housed in state facilities by shifting responsibility to the county level ' "for all but the most serious youth offenders." ' (*In re N.D.* (2008) 167 Cal.App.4th 885, 891; see *Greg F*., at pp. 409–410.) Although reasonable minds may debate the wisdom of the chosen approach, decisions about how to limit DJF commitments are the Legislature's to make." (*Id*. at p. ___ [p. 11].)

The Supreme Court concluded: "[Section 733(c)] prohibits a DJF commitment unless the most recent offense alleged in any petition and admitted or found true is listed in section 707(b) or Penal Code section 290.008(c). (§ 733(c).) We are not free to rewrite the law simply because a literal interpretation may produce results of arguable

7

utility. The Legislature, of course, remains free to amend section 733(c) if the language it has enacted is now understood to create unintended consequences." (*Id*. at p. ___ [p.12].)

We have here another unintended consequence of section 733(c) as written. Since section 733(c) precluded a DJF commitment because minor's most recent offense was not a qualifying offense, the court lacked authority to order minor committed to the DJF for his recent commission of attempted murder, which was done for the benefit of a criminal street gang and involved a principal's intentional and personal discharge of a firearm.

### DISPOSITION

The judgment is reversed for the limited purpose of vacating the dispositional order committing minor to the DJF. The matter is remanded to the juvenile court with instructions to vacate its DJF commitment order and conduct a new disposition hearing.


_____

ELIA, J.


WE CONCUR:



_____

RUSHING, P. J.



_____

PREMO, J.

8