Filed 9/14/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JESSE BARBER<br><br>on Habeas Corpus. | B284060<br><br>(Los Angeles County<br>Super. Ct. No. PA060193) |

Petition for writ of habeas corpus.  Petition granted.

Kelly Emling, Acting Public Defender, Kenneth I. Clayman, Public Defender, Albert J. Menaster, Kathy Quant and Lara Kislinger, Deputy Public Defenders, for Petitioner Jesse Barber.

Fuentes & McNally, Raymond J. Fuentes and Kim E. McNally for Respondent Los Angeles County Sheriff's Department.

Jackie Lacey, District Attorney, Matthew Brown and Scott D. Collins, Deputy District Attorneys, for the People, an interested party.

———————————

At a probation violation hearing, petitioner Jesse Barber was sentenced to three years in prison, execution suspended, and continued on formal probation on the condition that he serve 365 days in jail. After his remand to the custody of the Los Angeles Sheriff's Department (the sheriff or sheriff's department), the sheriff allowed Barber to complete his jail sentence through a work release program (Pen. Code, § 4024.2).[1] When he failed to complete the program, the sheriff issued an "IRC Want" for Barber's arrest in 2010. Not until May 2017 was Barber arrested on that IRC Want. In the interim, Barber's probation expired in 2012. Notwithstanding the expiration of probation, the sheriff claimed authority to confine Barber under section 4024.2, which provides that if a person violates the terms of a work release program the sheriff may take the person into custody to serve the "remainder" of his or her "sentence." Barber therefore filed a petition for writ of habeas corpus challenging the legality of his confinement. We agree he is being illegally held and grant the petition.

## BACKGROUND

In 2007, Barber pled no contest to second degree commercial burglary (§ 459). On November 6, 2007, the trial court suspended imposition of sentence and placed Barber on three years' formal probation on the condition he serve 365 days in jail. On July 22, 2010, the court revoked and reinstated probation and Barber was sentenced to three years in prison, execution suspended, and ordered to serve 365 days in jail. He received zero days of credit, having waived back-time.

---

[1]     All further undesignated statutory references are to the Penal Code.

2

In August 2010, Barber began a work release program. In connection with that program, he signed two documents. First, he signed the CBAC WRP Rules and Regulations,[2] in which he acknowledged that if he failed to report for work, violated the rules of the program or failed to complete the program, "I will be required to serve the balance of my sentence in straight-time confinement. Further, failure to complete the program will be viewed by the Court as a violation of Section 4024.2 P.C., a misdemeanor, and a complaint will be filed against me." Second, Barber signed a work in lieu of confinement agreement acknowledging that "if I fail to appear or complete the Work Release Program for any reason, I am guilty of violating section 4024.2 . . . , a misdemeanor, and additional charges will be filed against me. Further, if my failure to comply with the provisions above, [*sic*] requires any peace officer to respond to my residence to complete my sentence in custody, any attempt to flee from any peace officer will result in additional charges of 'ESCAPE', 4532 PC, filed against me." (Bold omitted.)

Although Barber worked 57 days in the work release program, his worksite supervisor noted, on November 5, 2010, that Barber had "excessive no shows," and Barber therefore had failed to complete the work assignment. Coincidentally, that same day, Barber appeared in court for a probation violation hearing.[3] Probation was modified to extend probation to

---

[2]    CBAC stands for Community Based Alternatives to Custody and WRP stands for Work Release Program.

[3]    The reporter's transcript from the hearing does not show the basis of the violation, but based on the timing of the hearing, it was not due to the excessive no shows.

February 25, 2012.[4]  On November 16, 2010, an IRC Want was entered into the countywide warrant system for Barber's "failed" "work release program."[5]  Over the next approximately four months, the sheriff's department unsuccessfully attempted to locate Barber.[6]  Barber also appeared in court on multiple occasions, but it appears no one was aware of the IRC Want.  On June 28, 2011, the court summarily found Barber in violation of probation based on the probation officer's report and revoked probation.  Barber appeared in court on December 19, 2011 on the bench warrant issued in connection with that alleged probation violation.  Barber was detained in the sheriff's custody and thereafter appeared in court for a hearing on that probation violation on January 4, 2012.  At that time, the court revoked and reinstated probation on the same terms and conditions, except that the court ordered Barber to serve 44 days in jail with credit for 44 days served.  Also, the court extended probation to September 1, 2012.  Barber was back in court for another probation violation hearing on June 5, 2012.  The court read and considered the probation release report, found Barber was not in violation of probation, and ordered probation to remain in effect. Probation expired on September 1, 2012.

Almost five years after probation expired in 2012 and six and one-half years after the 2010 IRC Want for absconding from

[4]      The November 5, 2010 minute order mistakenly states that probation was revoked and reinstated.

[5]      The IRC Want had a "purge date" of May 15, 2011, and the IRC Want noted that Barber owed 165 days in jail.

[6]      There was an additional unsuccessful attempt in July 2016.

4

the work release program had issued, Barber was arrested based on the IRC Want on May 22, 2017. He has been in custody since that day. The public defender's office filed a writ of habeas corpus on Barber's behalf in the trial court alleging that Barber was being held "without a current case." The trial court denied the petition. Barber then filed the at-issue petition for writ of habeas corpus, repeating that jurisdiction over his case was lost when probation expired and that detaining him without a hearing violated due process. We issued an order to show cause and now grant the petition.[7]

## DISCUSSION

Barber contends there is no legal basis to detain him in custody because his probation expired and because section 4024.2 does not provide authority to detain him. He is correct.

We begin with a well-established principle: once probation expires, a court loses jurisdiction to make an order revoking or modifying an order suspending the imposition of sentence or execution thereof and admitting the defendant to probation. (§ 1203.3; *People v. Leiva* (2013) 56 Cal.4th 498, 505, 516-518; *In re Griffin* (1967) 67 Cal.2d 343, 346; *Hilton v. Superior Court* (2014) 239 Cal.App.4th 766, 772 [once probationary term expires, trial court no longer has jurisdiction to modify the defendant's probation and the defendant must be discharged from probation]; *People v. Lewis* (1992) 7 Cal.App.4th 1949, 1955-1956 ["When a probationer is discharged, he or she has completed the term of

---

[7]    In addition to briefing from the sheriff, we received briefing from the District Attorney for Los Angeles County on behalf of the People of the State of California. We refer to the People and the sheriff's department collectively as respondents.

5

probation, and the court no longer has jurisdiction."].)  Here, Barber's probation expired in September 2012.  At that time, the trial court lost jurisdiction to take any action against Barber as a result of any violation of his probation resulting from his failure to complete the work release program.  Stated otherwise, Barber could not be returned to custody in 2017 as a consequence of violating probation.[8]

Although respondents agree the trial court lost jurisdiction in 2012 when probation expired, they assert that Barber must serve the previously imposed July 22, 2010 jail "sentence" under section 4024.2.  Section 4024.2 allows the board of supervisors to authorize the sheriff to offer a voluntary work release program in which one day of participation will be in lieu of one day of "confinement."  (*Id*., subd. (a).)  "As a condition of participating in a work release program, a person shall give his or her promise to appear for work or assigned activity by signing a notice to appear before the sheriff . . . at a time and place specified in the notice and *shall sign an agreement that the sheriff may immediately retake the person into custody to serve the balance of his or her sentence* if the person fails to appear for the program at the time

---

[8]     We recognize that section 1203.3, subdivision (c), provides that if a probationer is ordered to serve time in jail and escapes while serving that time, then probation is revoked as a matter of law on the day of the escape.  Although absconding from a work release program may constitute an "escape" for the purposes of that subdivision (see, e.g., *People v. Bojorquez* (2010) 183 Cal.App.4th 407), section 1203.3, subdivision (c) is irrelevant here because, even assuming that Barber's probation was revoked as a matter of law on or about November 5, 2010 when he failed to appear at the work release program, probation was thereafter reinstated in January 2012.

6

and place agreed to, does not perform the work or activity assigned, or for any other reason is no longer a fit subject for release under this section. . . . Any person who willfully violates his or her written promise to appear at the time and place specified in the notice is guilty of a misdemeanor." (*Id.*, subd. (c), italics added.) The section further provides two ways in which a person who violates the terms of a work release program may be taken into custody: "Whenever a peace officer has reasonable cause to believe the person has failed to appear at the time and place specified in the notice or fails to appear or work at the time and place agreed to or has failed to perform the work assigned, the peace officer may, without a warrant, retake the person into custody, or the court may issue an arrest warrant for the retaking of the person into custody, *to complete the remainder of the original sentence.* A peace officer may not retake a person into custody under this subdivision, without a warrant for arrest, unless the officer has a written order to do so, signed by the sheriff or other person in charge of the program, that describes with particularity the person to be retaken."[9] (*Ibid.*, italics

---

[9] The People claim that the IRC Want satisfied the requirement in section 4024.2, subdivision (c) that a peace officer "may not retake a person into custody under this subdivision, without a warrant for arrest, unless the officer has a written order to do so, signed by the sheriff or other person in charge of the program, that describes with particularity the person to be retaken." Respondents have not provided either a warrant or any document that is a "written order" "signed by the sheriff or other person in charge of the program, that describes" Barber with "particularity." It therefore does not appear, on this record, that the sheriff complied with section 4024.2's procedural requirements.

7

added.) According to respondents, section 4024.2 thus allows the sheriff to return Barber to custody to serve the remainder of the judicially-imposed sentence, here, 365 days in county jail.[10]

Here, the word "sentence" in section 4024.2 controls the outcome. In interpreting a statute, we give words their usual and ordinary meaning and construe them in their statutory context, because this is usually the most reliable indicator of legislative intent. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232-1233; *Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304; *Los Angeles Unified School Dist. v. Superior Court* (2007) 151 Cal.App.4th 759, 767.) " ' "If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." [Citation.]' " (*Catlin*, at p. 304.) The word "sentence" in section 4024.2 cannot refer to Barber's three-year sentence because its execution was suspended. "Sentence" can only refer to the 365 days in county jail imposed as a condition of probation on July 22, 2010. But, by operation of law, once Barber's probation expired, that condition of probation ceased to exist. There was, therefore, no "remainder of the original sentence" for Barber to serve.[11]

---

[10] The sheriff submitted a sentence computation worksheet showing that the remainder of Barber's sentence is less than 365 days based on days already served and worked and on an "80% Release Criteria."

[11] The People posit a situation in which our logic supposedly fails: where "a court revokes the probation of an individual, sentences that individual to time in custody in lieu of probation, and then terminates probation as a result of the custodial sentence," and the defendant escapes custody. The defendant, the People suggest, would be "immune" from serving the remainder of his or her sentence because probation had terminated. The suggestion is meritless. In the People's

The sheriff, however, suggests he may place Barber in custody because the work release program is not a "condition of . . . probation but rather a contractually agreed upon alternative to custody through" the sheriff's department. This is wordplay. True, a court may not impose a work release program as a condition of probation; rather eligibility for the program and its administration are within the sheriff's purview. (*Ryan v. Commission on Judicial Performance* (1988) 45 Cal.3d 518, 539.) However, the "sentence" the sheriff seeks to impose is the 365 days in county jail that was a condition of Barber's probation. As we have said, that condition of probation no longer exists. Moreover, to the extent the sheriff also suggests that Barber may be held in custody as a matter of contract law based on the work release documents Barber signed, the sheriff cites no authority for the notion that one can contractually agree to be incarcerated.

Finally, we are unpersuaded that our holding in this factually unique case will encourage defendants in work release programs to abscond and hide out until their probation expires. There is good reason for them not to engage in such behavior. The sheriff can notify the court or the probation department, and the court can revoke probation. Or, if the sheriff chooses not to notify the court, defendants still risk discovery within the probationary time. At any probation violation hearing, the court can impose additional time in custody or impose any suspended sentence. The prosecutor can also charge defendant with a misdemeanor (§ 4024.2). Moreover, in this case, that probation expired before law enforcement caught up with Barber cannot be

scenario, sentence was imposed and probation was not reinstated.

9

wholly attributed to his evasion of law enforcement. Barber was not in hiding. He was in the sheriff's own custody at the Los Angeles County jail from at least December 19, 2011 through January 4, 2012, *after* the IRC Want had issued in 2010 for his failure to complete the work assignment. He appeared in court at probation violation hearings on January 4, 2012 and June 5, 2012, again *after* the IRC Want had issued. Law enforcement therefore had ample opportunity to apprehend Barber within the period of probation, but did not.[12]

---

[12]     We need not address Barber's claim that due process demands a hearing before a person who has violated the terms of a work release program may be returned to custody. The situation before us is limited to one involving expiration of probation, and we order Barber released on that ground. We have no occasion to address what process is due to a person who absconds from a work release program and whose probation has not expired.

## DISPOSITION

The petition for writ of habeas corpus is granted. The Los Angeles County Sheriff's Department is hereby directed to release petitioner forthwith from the custody imposed in connection with this matter.

In the interests of justice, this opinion shall be deemed final immediately upon filing and, pursuant to the parties' stipulation, the remittitur shall issue forthwith. (Cal. Rules of Court, rules 8.272(c)(1), 8.387(b)(3)(A).)

**CERTIFIED FOR PUBLICATION**


BACHNER, J.*


We concur:



EDMON, P. J.



LAVIN, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11