Filed 12/12/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| In re LATASHA RILEY on Habeas Corpus. | A174426 |
| --- | --- |
| | (Contra Costa County Super. Ct. No. 012202510) |

In exchange for a no contest plea, Latasha Riley was sentenced to four years of probation and a 60-day county jail term.  She was referred to a work release program in lieu of serving jail time.  She was unable to complete the work release program due to her recently discovered pregnancy, and the trial court ordered her to serve the remainder of her jail term in custody.

Riley filed a petition for habeas corpus in this court, and we issued an order to show cause.  We hold that persons enrolled in work release programs in lieu of jail time have a conditional liberty interest that cannot be revoked without affording due process.  (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481–482; *People v. Vickers* (1972) 8 Cal.3d 451, 458.)  Under the facts of this case, we conclude the trial court violated Riley's due process rights by ordering her back into custody based on a critical finding — that it was not feasible for her to participate in the program — unsupported by substantial evidence.

## BACKGROUND

In February 2024, Riley entered a no contest plea to two counts of willful infliction of corporal injury and one count of dissuading a witness; she

also admitted causing great bodily injury. (Pen. Code, §§ 273.5, subd. (a), 136.1, subd. (b)(1), 12022.7, subd. (e); undesignated statutory references are to this code.) In exchange, she received four years of probation and a 60-day county jail term. The agreement allowed her to apply for electronic home detention in lieu of serving jail time. The trial court entered judgment accordingly. In March, the sheriff asked the court to refer her to its work release program instead of electronic home detention. The court did so.

In June 2024 — after having served six days in the work release program — Riley missed work because of morning sickness related to her pregnancy. She did not know she was pregnant when she enrolled in the program. After she provided proof to the sheriff, the sheriff told her they would send her file back to the trial court, and that the court "will find something else for you to do that is lighter or possibly give you a 'stay' that will send you back to the program at a later date." The sheriff advised probation about Riley's pregnancy, that she was referred back to court, and that she was advised "not to return to the worksite" because there was "no light duty available" and "to follow up with her Attorney and/or the court for the next steps."

In September 2025 — after probation requested that she add herself to the trial court's calendar — Riley voluntarily appeared in court with her eight-month-old baby. She asked the court to re-refer her to the work release program. The prosecutor instead urged that she be ordered to serve the remainder of her jail term in custody. Although the court found that she did not willfully violate the terms of the program, it nonetheless ordered her to serve the remainder of her term in custody. It reasoned that she was sentenced to 60 days, "given the chance to do that by alternative means," and since "[t]hose alternative means were no longer feasible . . . that 60-day jail

2

sentence is going to go into effect."  It then denied her request for a future surrender date so she could get her affairs in order and instead ordered her into custody immediately.

Eleven days later, Riley filed a petition for writ of habeas corpus in this court.  She requested that we direct the trial court to order her release and refer her back to the sheriff to complete her work assignment.  In the alternative, she requested that this court issue an order to show cause.  She argued that the court abused its discretion and violated her due process rights by terminating her eligibility for the work release program despite finding that she did not willfully violate its terms and without making an adequate inquiry into whether she remained fit for it.  In its informal opposition, the prosecutor argued that the sheriff determined she was not fit for work release, and the court was not required to hold a hearing regarding that determination.

On October 2, 2025, we issued an order to show cause.  We also ordered that Riley be temporarily released pending disposition of her petition.  In its return, the sheriff stated it had no position regarding her requested relief.  It also clarified that it only referred her back to the trial court for it to "find something else for [her] to do that is lighter" or "possibly give [her] a 'stay,'" and that it was the court that terminated her participation in the program.  It noted it did not participate in the September 2025 hearing.

## DISCUSSION

Riley contends the trial court abused its discretion and violated her due process rights by terminating her from the work release program despite finding no willful violation and without making an adequate inquiry into whether she remained fit for it.  Having reviewed the parties' briefs, we agree

3

that the court violated her due process rights when it found she was not fit for the program. Thus, we need not address her other claims.

We begin by setting forth the statutory framework governing work release programs. "[S]ection 4024.2 provides that the administrative official in charge of county correctional facilities may offer a voluntary work-release program in lieu of jail time." (*Ryan v. Commission on Judicial Performance* (1988) 45 Cal.3d 518, 538, fn. omitted.) "Subdivision (a) of section 4024.2 states that the program may only be offered to someone already committed to the correctional facility." (*Id.* at pp. 538–539.) "Moreover, subdivision (c) provides that a person is eligible for the program at the discretion of the administrative official in charge of the program, subject to the fitness of the person for the program and compliance with the rules of the program." (*Id.* at p. 539.) Thus, a "judge has the power to commit a person to a correctional facility, but then the administrative official in charge of the facility has the discretionary power to offer work release if the person is deemed eligible under the rules of the program." (*Ibid.*) As a condition for participating, the person " 'shall sign an agreement that the sheriff may immediately retake the person into custody to serve the balance of his or her sentence if the person fails to appear for the program at the time and place agreed to, does not perform the work or activity assigned, or for any other reason is no longer a fit subject for release.' " (*In re Barber* (2017) 15 Cal.App.5th 368, 373, italics omitted.)

Riley argues that, once persons have been enrolled in a work release program pursuant to this statutory framework, they have a conditional liberty interest a trial court cannot revoke without due process. (*Morrissey v. Brewer, supra,* 408 U.S. at pp. 481–482; *People v. Vickers, supra,* 8 Cal.3d at p. 458.) We agree. Parolees and probationers have conditional liberty

interests protected by due process, and we see no meaningful difference between them and those enrolled in work release programs. (*Morrissey*, at pp. 481–482; *Vickers*, at p. 458.) Like parolees, such persons enjoy a liberty that "includes many of the core values of unqualified liberty," and "its termination inflicts a 'grievous loss.' " (*Morrissey*, at p. 482.) They are "free to be with family and friends and to form the other enduring attachments of normal life." (*Ibid*.) Although they are subject to some restrictions, their "condition[s are] very different from that of confinement," and they too rely on "an implicit promise" that their liberty "will be revoked only if [they] fail[] to live up to" the conditions of their release. (*Ibid*.) Like probationers, the nature of their liberty interest is at least that of a parolee since many have "not . . . been an inmate of a prison or a jail." (*Vickers*, at p. 458.) Notably, the prosecutor and the sheriff do not contend otherwise. (*In re Ramone R.* (2005) 132 Cal.App.4th 1339, 1351 [failure to offer counter argument implicitly conceded point].)

Here, the trial court violated Riley's due process rights by revoking her participation in the work release program. To begin, it appears that only the sheriff had the power to terminate her participation in the program. (*Ryan v. Commission on Judicial Performance*, *supra*, 45 Cal.3d at p. 538; *In re Barber*, *supra*, 15 Cal.App.5th at p. 373.) (Indeed, the prosecutor so observes in their opposition.) But more importantly, at the heart of the court's ruling was a critical factual finding that was unsupported by the record, and the court thus abused its discretion by relying on it when revoking her liberty. (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998 ["A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence"].) That is, the court remanded her to custody after finding her participation in the program "no longer feasible." The record is devoid of

evidence supporting that finding. Even when she was pregnant, the sheriff stated the court would find "something else for [her] to do that is lighter" or might give her a " 'stay' that will send [her] back to the program at a later date." The sheriff only told her "not to return to the worksite" because there was "no light duty available" and "to follow up with her Attorney and/or the court for the next steps"; it did not terminate her from the program. None of these statements support an inference that she could not participate in the program as of September 2025, when she was no longer pregnant. The prosecutor and sheriff do not dispute this conclusion. (*In re Ramone R.*, *supra*, 132 Cal.App.4th at p. 1351.) With no evidence supporting the court's finding, its decision to terminate Riley's participation in the program and remand her into custody was arbitrary, irrational, and an abuse of discretion. (*Cluff*, at p. 998; *People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Although we decline to further elaborate on what due process is owed to people in Riley's position, we can safely conclude they are entitled to more than she received here. (*Morrissey v. Brewer*, *supra*, 408 U.S. at pp. 481–489; *People v. Vickers*, *supra*, 8 Cal.3d at pp. 458, 460.)

## DISPOSITION

The trial court's order is reversed, and we remand the matter. On remand, the court is instructed to re-refer her to the work release program to complete any days that she may still owe on her term.

_____

RODRÍGUEZ, J.

WE CONCUR:


_____

FUJISAKI, Acting P. J.


_____

PETROU, J.

A174426; *In re Riley on Habeas Corpus*

Trial Court: Contra Costa County Superior Court

Trial Judge: Hon. Glenn Kim

Counsel:

Ellen McDonnell, County Public Defender, Jeremy Price and Rachel Lorber, Deputy Public Defenders for Petitioner.

No appearance for Respondent.

Diana Becton, District Attorney, Saron Tesfai and Angela Dib, Deputy District Attorneys for Real Party in Interest.