Filed 1/28/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GILBERT RAUL RUBIO, | B264635 |
| Petitioner, | |
| v. | (Los Angeles County Super. Ct. No. NA035152) |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

 ORIGINAL PROCEEDINGS in mandate.  Tomson T. Ong, Judge.
Petition granted.

 Nisha K. Shah, Talia MacMath and Rachel G. Cohen for Petitioner.

 No appearance for Respondent.

 Jackie Lacey, District Attorney, Phyllis C. Asayama and John Harlan II, Deputy
District Attorneys for Real Party in Interest.

_____

INTRODUCTION

Penal Code section 1054.9[1] permits defendants sentenced to death or life in prison without the possibility of parole to obtain postconviction discovery of materials to which they would have been entitled at the time of trial, upon a showing that good faith efforts to obtain those materials from trial counsel have been unsuccessful. Subdivision (d) of section 1054.9 provides that the "actual costs of examination or copying pursuant to this section shall be borne or reimbursed by the defendant." Petitioner Gilbert Raul Rubio, who has been convicted of first degree murder and sentenced to death, sought such discovery from the office of the Los Angeles County District Attorney. After providing considerable discovery both informally and pursuant to court order, the district attorney's office requested, and the trial court ordered, Rubio to pay $2,560.53 pursuant to section 1054.9, subdivision (d), as reimbursement for not only the cost of copying documents onto electronic media, but also for the time spent by a staff paralegal examining the records in preparation for production. Rubio seeks a writ of mandate compelling the trial court to vacate its order. The sole issue before us is whether the phrase "actual costs of examination or copying" in section 1054.9, subdivision (d) encompasses only the cost of the product, i.e., the cost of the copies, or also includes the cost of the service, i.e., the hourly wages of staff who not only copied, but also examined the documents in preparation for production. We conclude that where the production of paper or electronic discovery is at issue, a defendant seeking postconviction discovery pursuant to section 1054.9 need not reimburse the agency providing the discovery for costs related to examination and preparation of documents for production. However, "actual costs" does include the labor cost of the employee who actually copies items or transfers them to electronic media, a proportional share of equipment costs, and the cost of the copies, such as the ink, paper, or compact disc.

---

[1]     All further undesignated statutory references are to the Penal Code.

BACKGROUND

In 2000, Rubio was convicted of the first degree murder of George Blackwell, with the special circumstances that the murder occurred during the course of a home invasion robbery and residential burglary. Rubio was sentenced to death. His direct appeal is pending before the California Supreme Court. In 2006, the Habeas Corpus Resource Center (hereinafter HCRC or counsel) was appointed to represent Rubio, who is indigent, in postconviction proceedings.

On November 12, 2014, Rubio brought a motion for postconviction discovery in the trial court pursuant to section 1054.9, seeking 12 categories of documents. The motion and supporting declaration explained that counsel had obtained all available discovery materials and files from trial counsel and had informally sought access to "all discovery produced by the District Attorney" in Rubio's case. In response, the Los Angeles County District Attorney's Office (hereinafter the People or "LADA"), provided two compact discs, in portable document format (PDF), each containing 16,834 pages. The files contained various redactions of work product and of information identifying jurors, witnesses, and other persons. Counsel believed that the compact discs were incomplete because they contained numerous blank pages, apparently indicating items missing due to improper scanning or a technological glitch. Based on her review of the record on appeal, trial counsel's files, and the materials provided by the People, counsel identified additional items to which Rubio had been entitled at trial, but which were not contained on the discs or in trial counsel's files. Further attempts to informally resolve the matter were, in counsel's view, unsatisfactory.

At the hearing on the motion, the deputy district attorney argued, inter alia, that Rubio's requests were too overbroad and nonspecific to comply with section 1054.9. She also complained that she had examined the compact discs that had been provided to counsel, and many of the items that were purportedly missing were, in fact, contained therein. The trial court denied the motion for the most part, without prejudice, because it was a "fishing expedition" and Rubio's requests lacked specificity. It indicated Rubio could "re-litigate the issue" if counsel made the discovery requests more specific.

3

Additional correspondence between the parties, a second section 1054.9 motion, and two more hearings followed. The People sought a court order requiring Rubio, before further discovery was produced, to reimburse them for the cost of examining and copying documents. A December 30, 2014 letter from the deputy district attorney to counsel stated: "You should . . . be aware that, in November 2013, the LADA formed the Discovery Compliance Unit (DCU), which took over, among other tasks, the responsibility of responding to Penal Code section 1054.9 discovery requests. As a result of the DCU's review of the LADA's practices and procedures regarding such requests, a determination was made to track, document and seek reimbursement for the actual costs of examining and copying file documents as provided in Penal Code section 1054.9(d). Generally, the actual costs of examining and copying consist of paralegal time billed at approximately $57.00 per hour. Once you specify the materials you are seeking, the LADA will provide you with an estimate of the actual cost of providing the discovery to you. [¶] Finally, it is not a viable option to have non-members of the LADA review and copy the LADA file. The security of the materials in the file is the responsibility of the LADA."

The People provided two "Statement[s] of Costs" and detailed time sheets documenting the hours spent by their paralegals, with a billing rate of $57.54 per hour, for a total of $2,560.53. To substantiate the hourly rate charged, the People provided a letter from the County of Los Angeles Department of Auditor-Controller. It stated that the billing rate was "approved" and included "applicable salaries and wages, employee benefits, services and supplies, and Countywide, departmental and divisional indirect costs." Counsel objected that the $57.54 per hour rate exceeded the published wage rate for paralegals, and section 1054.9 allowed only the actual costs of examination or copying.

At the hearing on Rubio's second motion, the deputy district attorney explained that the People's paralegal had spent 32 hours searching the discovery already provided to Rubio to determine whether items he subsequently requested were contained therein. As a result of that search, the People determined many of the requested items had already

4

been provided. Thus, $1,841 of the bill was attributable to "the LADA going through the discovery that was provided to the defense." The remaining $719 was attributable to the costs of photographs and autopsy x-rays, which had not previously been provided. The bill included the paralegal's time and "overhead," but not "attorney time."

Rubio's counsel acknowledged that the HCRC should pay the "actual cost of the scanning of the photographs," but was not obliged to pay for the paralegal's hourly wage and benefits. She disagreed that the documents requested were actually on the compact disc that had originally been provided.

The trial court opined that labor costs should be chargeable to the defendant where the People had to compile information in order to satisfy a specific request. It ordered Rubio to pay $2,560.53 for the "cost of reproduction of the 99 photos and for the paralegal time that was used to go through and find information in the CD" that counsel already had been provided "because that is cost shifting. Otherwise, your paralegal would have had to do that." On June 1, 2015, it issued a written order stating its ruling, indicating that part of the cost calculation was based on the paralegal's time.

Rubio thereafter petitioned this court for writ of mandate compelling the trial court to vacate its order requiring him to pay the $2,560.53, and to "interpret [section] 1054.9(d) to include only the direct cost of duplicating the requested discovery to the exclusion of the salary, benefits, and other indirect costs of responding to requests for discovery." We issued an order to show cause.

DISCUSSION

1. *The statute*

In 2002, the Legislature enacted section 1054.9, which provides for a limited statutory right to postconviction discovery for defendants sentenced to death or life in prison without the possibility of parole (LWOP). (*Barnett v. Superior Court* (2010) 50 Cal.4th 890, 897 (*Barnett*); *People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 569 (*Pearson*); Stats. 2002, ch. 1105, § 1, enacting Sen. Bill No. 1391 (2001-2002 Reg. Sess.).) Section 1054.9 provides:

5

"(a) Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall, except as provided in subdivision (c), order that the defendant be provided reasonable access to any of the materials described in subdivision (b).

"(b) For purposes of this section, 'discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial.

"(c) In response to a writ or motion satisfying the conditions in subdivision (a), [the] court may order that the defendant be provided access to physical evidence for the purpose of examination, including, but not limited to, any physical evidence relating to the investigation, arrest, and prosecution of the defendant only upon a showing that there is good cause to believe that access to physical evidence is reasonably necessary to the defendant's effort to obtain relief. The procedures for obtaining access to physical evidence for purposes of postconviction DNA testing are provided in Section 1405, and nothing in this section shall provide an alternative means of access to physical evidence for those purposes.

"(d) The actual costs of examination or copying pursuant to this section shall be borne or reimbursed by the defendant."

Our Supreme Court has explained that section 1054.9 requires "the trial court, on a proper showing of a good faith effort to obtain the materials from trial counsel, to order discovery of specific materials currently in the possession of the prosecution or law enforcement authorities involved in the investigation or prosecution of the case that the defendant can show either (1) the prosecution did provide at time of trial but have since become lost to the defendant; (2) the prosecution should have provided at time of trial because they came within the scope of a discovery order the trial court actually issued at that time, a statutory duty to provide discovery, or the constitutional duty to disclose

6

exculpatory evidence; (3) the prosecution should have provided at time of trial because the defense specifically requested them at that time and was entitled to receive them; or (4) the prosecution had no obligation to provide at time of trial absent a specific defense request, but to which the defendant would have been entitled at time of trial had the defendant specifically requested them." (*In re Steele* (2004) 32 Cal.4th 682, 697.) Although section 1054.9 is not merely a " 'file reconstruction statute,' " it provides "only limited discovery. It does not allow 'free-floating' discovery asking for virtually anything the prosecution possesses." (*In re Steele, supra,* at pp. 693, 695; *Barnett, supra,* 50 Cal.4th at p. 899.) The People are under no obligation to "search for or obtain materials not currently possessed." (*In re Steele, supra,* at p. 695.)

Section 1054.9 " 'should be interpreted to promote informal, timely discovery between parties prior to seeking court enforcement.' " (*In re Steele, supra,* 32 Cal.4th at p. 692.) "The Legislature's purpose of enabling file reconstruction should not be difficult to implement." (*Barnett, supra,* 50 Cal.4th at p. 898.) Defendants should first seek trial files from trial counsel. If a defendant can show a legitimate reason to believe trial counsel's current files are incomplete, he or she "should be able to work with the prosecution to obtain copies of any missing discovery materials it had provided to the defense before trial (assuming it still possesses them)." (*Ibid.*)

A section 1054.9 motion may be filed by an inmate who has already filed a habeas corpus petition, or who is preparing to file such a petition. (*Catlin v. Superior Court* (2011) 51 Cal.4th 300, 306; *In re Steele, supra,* 32 Cal.4th at pp. 688, 691.) Although either the trial court or a reviewing court has jurisdiction over a section 1054.9 motion, it should generally be filed first in the trial court in which the conviction occurred. After the trial court has ruled, either party may challenge that ruling by a petition for writ of mandate. (*In re Steele, supra,* at pp. 688, 691-692.)

While *Barnett* and *In re Steele* have clarified many of the procedural and substantive questions related to section 1054.9, no case appears to have yet considered the meaning of subdivision (d).[2]

2. *Contentions of the parties*

The parties do not challenge the trial court's rulings denying or compelling discovery of specific items, and they agree the matter is properly before this court. They also agree that under the plain terms of section 1054.9, a defendant is responsible for the per page, direct duplication cost of discovery provided. They disagree, however, about which party should bear the labor and indirect costs related to the examination, preparation, and copying of records necessary to respond to a 1054.9 request.

According to the People, the plain language and legislative history of section 1054.9 demonstrates that "actual costs of examination or copying" means not only duplication costs, but also the "services rendered in order to produce the product," that is, staff time spent locating, retrieving, examining, preparing, and copying materials. They aver that here, paralegals in the district attorney's office spent 44.5 hours reviewing approximately 17,000 pages of documents in order to respond to Rubio's request. They contend that "[p]roducing section 1054.9 discovery requires the specialized knowledge of a paralegal familiar with criminal prosecution practices and investigations," including work product and privacy privileges, and "specialized knowledge of the nomenclature, often local, used in criminal practice." In a nutshell, the People contend "actual costs" means "the service and the product." The People clarify that they do not expect an indigent defendant such as Rubio to pay for the costs of examination or copying personally, but aver that funds available to him pursuant to Government Code section 68666 should be used for this purpose.

---

[2]    Rubio cites two unpublished opinions that he contends held section 1054.9, subdivision (d) imposes only copying costs. Absent exceptions not present here, unpublished opinions may not be cited as authority. (Cal. Rules of Court, rule 8.1115; *People v. Williams* (2009) 176 Cal.App.4th 1521, 1529.) We do not consider the cited cases.

8

In Rubio's view, "actual costs" means only the costs of duplication, not the services involved in providing the copies. He urges that under section 1054.9, "actual costs" is limited to the cost of materials necessary to duplicate the documents, such as paper, toner, and equipment use fees, and does not include staff time spent locating, retrieving, examining, or copying discoverable materials. The plain language of section 1054.9, he argues, cannot be read to encompass "salary, benefits, or fixed costs" of the party providing discovery, and he should therefore be charged nothing more than the price of the compact disc upon which the discovery was provided. He complains that the People have improperly conditioned access to discovery to which he is legally entitled upon his payment of an exorbitant sum.

3. *Standard of review*

Although we generally review a trial court's ruling on discovery issues for abuse of discretion (*People v. Curl* (2009) 46 Cal.4th 339, 357), because the issue before us turns on the interpretation of section 1054.9, subdivision (d), our review is de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71; *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1232.) Our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. We begin with the statutory language, giving the words their usual and ordinary meaning and construing them in their statutory context, because this is usually the most reliable indicator of legislative intent. (*Lee v. Hanley, supra,* at pp. 1232-1233; *Catlin v. Superior Court, supra,* 51 Cal.4th at p. 304; *Los Angeles Unified School Dist. v. Superior Court* (2007) 151 Cal.App.4th 759, 767.) " ' "If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." [Citation.]' " (*Catlin, supra,* at p. 304.) If the statutory language may reasonably be given more than one interpretation, we may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute. (*Ibid*.) " ' "Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute," ' " and

9

avoiding a construction that would lead to absurd consequences. (*Lee v. Hanley, supra,* at p. 1233; *Los Angeles Unified School Dist., supra,* at p. 768.)

4. *The meaning of "actual costs of examination or copying" in section 1054.9*

Resolution of the issue before us hinges on two questions. First, does the term "examination" in section 1054.9, subdivision (d) pertain to the defendant's own examination of physical evidence, or does it refer to the People's examination of documentary evidence in preparation for production of discovery? Second, does the term "actual costs" encompass only the costs of document duplication, or does it include labor and ancillary costs incurred in reviewing, preparing, or copying documents?

a. *"Examination" in section 1054.9, subdivision (d), does not refer to the People's examination of documents*

Underlying the People's argument is the assumption that that the word "examination," in section 1054.9, subdivision (d), includes the People's examination of discovery materials in preparation for production in response to a postconviction discovery request. We disagree. The most plausible reading of the statute is that "examination" in subdivision (d) refers to the defendant's own examination of physical evidence, not the People's examination of discovery materials in preparation for production.

Section 1054.9 treats "discovery materials" and physical evidence differently. Section 1054.9, subdivision (b) defines "discovery materials" as "materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial." Subdivision (a) provides that, upon a showing the defendant made good faith, but unsuccessful efforts to obtain such discovery materials from trial counsel, the court "shall" order that the defendant be provided "reasonable access" to them, "except as provided in subdivision (c)."

Section 1054.9, subdivision (c) addresses "physical evidence." It provides that a defendant is to be given access to physical evidence only upon a showing of good cause to believe that such access is reasonably necessary to the defendant's effort to obtain relief. (*Ibid.*) If such a showing is made, the court "may order" that the defendant be

10

provided access "for the purpose of examination." (*Ibid.*) Although section 1054.9 does not expressly define "physical evidence," a commonsense reading suggests the Legislature intended "physical evidence" to refer to items such as biological material, weapons, original trial exhibits, and the like. Subdivision (c)'s reference to "access to physical evidence for purposes of postconviction DNA testing" confirms this typical use of the phrase; DNA is derived only from biological evidence.

Thus, a defendant must meet a more demanding, good cause standard to obtain access to physical evidence, upon which the court "may" order access; in contrast, a defendant need only show good faith, but unsuccessful, efforts to obtain other discovery materials, whereupon the court "shall" order access. Section 1054.9 also uses different language in regard to the access provided: a defendant must be given "*reasonable access*" to discovery materials, but may be "provided access to physical evidence *for the purpose of examination.*" (§ 1054.9, subds. (a), (c), italics added.)

Section 1054.9 uses the word "examination" *only* in regard to physical evidence. The statute does not mention copying until the reference in subdivision (d). Because most physical evidence cannot be "copied," subdivision (d)'s reference to copying appears to pertain to discovery materials. "Examination" in subdivision (d) therefore correlates to physical evidence, whereas "copying" correlates to discovery materials.

Section 1054.9, subdivision (d) speaks of the "actual costs of examination *or* copying." (Italics added.) The Legislature's use of the disjunctive "or" is telling. " 'The plain and ordinary meaning of the word "or" is well established. When used in a statute, the word "or" indicates an intention to designate separate, disjunctive categories.' " (*Eddie E. v. Superior Court* (2015) 234 Cal.App.4th 319, 327; *Price v. Starbucks Corp.* (2011) 192 Cal.App.4th 1136, 1146 [when used in the ordinary sense, "or" suggests alternatives].) Subdivision (d) thus mirrors the distinction between examination of physical evidence and access to other discovery materials.

The foregoing suggests section 1054.9, subdivision (d) must be read to mean a defendant is to bear or reimburse the *actual costs of his or her examination of physical evidence*, or the *actual costs of copying other discovery materials*. Subdivision (d)

11

follows on the heels of subdivisions (b) and (c), and is most logically read as reflecting the distinction made in those subdivisions between physical evidence and other discovery materials. "Costs of examination" seems clearly to refer back to subdivision (c), i.e., access to physical evidence for purpose of examination, rather than the People's examination of documents in preparation for providing copies of paper or electronic discovery. To read "examination" as encompassing the People's examination of discovery materials, we would have to improperly change the word "or" to "and." (See *People v. Guzman* (2005) 35 Cal.4th 577, 587; Code Civ. Proc., § 1858.) We would also have to ignore the fact that subdivision (c), and only subdivision (c), speaks of examination of evidence.

If any statutory ambiguity exists, the legislative history supports this interpretation. As introduced on February 13, 2002, Senate Bill No. 1391 provided in relevant part: "(b) *Counsel shall be provided access to any evidence* to which trial counsel for the same defendant was entitled at time of trial, including, but not limited to, any physical evidence in the possession of the prosecution and law enforcement authorities relating to the investigation, arrest, and prosecution of the defendant *for the purposes of examination or independent testing*." (Sen. Bill No. 1391 (2001–2002 Reg. Sess.) § 1, as introduced Feb. 13, 2002, italics added (Senate Bill No. 1391).) Subdivision (c) stated: "The actual *costs of reproducing any documents* pursuant to this section shall be borne or reimbursed by defendant." (*Id*., subd. (c), italics added.)

Amendments made on April 10, 2002 changed the word "evidence" to "discovery materials" and "counsel" to "defendant." Subdivision (b) was amended to read, in relevant part: "A defendant shall be provided *access to discovery materials* in the possession of the prosecution and law enforcement authorities . . . including, but not limited to, any physical evidence relating to the investigation, arrest, and prosecution of the defendant *for the purposes of examination or copying*." (Sen. Bill No. 1391, § 1, as amended Apr. 10, 2002, italics added.) The costs provision was amended to essentially its current form: "The actual costs of examination or copying pursuant to this section shall be borne or reimbursed by defendant." (*Id*., subd. (c).)

12

Thus, in both versions of the bill, the "examination" at issue was the defendant's, or his counsel's, examination, not the People's. When the April 10, 2002 amendments clarified that access was to be provided to the defendant "for the purposes of examination or copying," the costs provision was amended to directly track this language, demonstrating that the "costs of examination or copying" were those related to the defendant's, not the People's, examination.

Senate Bill No. 1391 was amended again on August 23, 2002. Subdivision (b) was changed to its current form, expressly defining "discovery materials." Discussion of physical evidence was moved to subdivision (c), which was amended to state in relevant part: "The court may order that the defendant be provided access to physical evidence for the purpose of examination" only upon a good cause showing. (Assem. Amend. to Sen. Bill No. 1391 (2001-2002 Reg. Sess.) § 1, Aug. 23, 2002.) The costs provision, with a single nonsubstantive change, was moved to a new subdivision (d). The reference to "copying" in former subdivision (b) was dropped, presumably because the relevant language was moved to subdivision (c), which, as amended, pertained only to physical evidence. Thus, the August 23 amendments do not suggest any intent to make "examination" encompass the People's activities in preparation for production.

The People argue that the phrase "actual costs of examination" cannot refer to the defendant's costs, because no cost is incurred when a defendant examines discoverable materials; "[a]ctually looking at an item, listening to an item, or touching an item does not cost anything." They urge that because each word of a statute must be given meaning (*In re C.H.* (2011) 53 Cal.4th 94, 103; *People v. Arias* (2008) 45 Cal.4th 169, 180), the statutory language must instead refer to the People's examination of discovery materials in preparation for production. But we do not agree that there could never be a cost involved in a defendant's examination of physical evidence. One hypothetical possibility is that a storage retrieval fee from a third party storage company could be incurred. Another is that a video or audio tape might need to be restored or moved from an obsolete medium to a currently readable format. Corrupted data from a telephone or computer might need to be recovered. The defendant would incur costs in each of these

13

scenarios. Moreover, a defendant would certainly incur examination costs if he or she had physical evidence tested or retested. In any event, section 1054.9, subdivision (d) does not require that a cost must always be incurred when physical evidence is examined; that such costs may be rare does not render the language surplusage.

In sum, the phrase "actual costs of examination" does not refer to the People's examination of "discovery materials" in preparation for production of documents in response to a defendant's postconviction discovery request. Instead, it refers to the costs related to the defendant's examination of physical evidence.

b. *"Actual costs"*

With this understanding of the statute in mind, the language relevant to the issue before us is "actual costs" of "copying." We turn to consideration of what the Legislature intended by this language.

Black's Law Dictionary defines "actual" as "[e]xisting in fact; real." (Black's Law Dict. (9th ed. 2009) p. 40.) Webster's defines "actual" as, among other things, "existing in fact or reality" and "real, genuine." (Webster's 3d New Internat. Dict. (2002) p. 22.) Webster's defines "actual cost" as "cost based on the most factual allocation of historical cost factors." (*Ibid.*) The Oxford online dictionary defines "actual cost" as "[t]he real expenditures incurred in buying or producing something, especially as opposed to a budgeted or estimated cost." (Oxford Dicts. Online (2015) <http://www.oxforddictionaries.com/definition/english/actual-cost> [as of Jan. 27, 2016].) "Copy" is defined as duplicate, reproduce, or transcribe. (Webster's 3d New Internat. Dict., *supra,* p. 504.)

As we explain more fully *post,* the plain language of the statute is incompatible with the People's interpretation that section 1054.9, subdivision (d), encompasses costs related to locating and examining discovery materials in preparation for production, as such activities cannot reasonably be characterized as "copying." However, the phrase "actual costs" of "copying" is subject to more than one interpretation. It is unclear from the statutory language whether "actual costs" was meant to include the labor and overhead cost of the employee who performs the copying, in addition to the per page

14

charge for copying equipment and supplies. Thus, insofar as it concerns the costs of the "service" necessary to copy discovery materials, section 1054.9 is ambiguous. (*Fredericks v. Superior Court* (2015) 233 Cal.App.4th 209, 230 [ambiguity exists when statutory language is susceptible of more than one reasonable interpretation].) Accordingly, we turn to the examination of extrinsic sources in order to decipher the statutory meaning. (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 166.)

(i) *Legislative history*

Our review of the legislative history of section 1054.9 sheds little light on the question before us.[3] The author's explanation of the purpose of the bill, which appeared repeatedly in committee reports, was, in pertinent part, as follows: " 'The problem that occurs all too often is this: a defendant's files are lost or destroyed after trial and habeas counsel is unable to obtain the original documents because the State has no legal obligation to provide them absent a court order. This leads to many delays and causes unnecessary public expenditures as prosecutors and habeas counsel litigate whether the defendant can demonstrate a need to re-access the materials and information originally available to him or her at trial. . . . The purpose of this bill is to provide a reasonable avenue for habeas counsel to obtain documents to which trial counsel was already legally entitled.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001-2002 Reg. Sess.) as amended Apr. 10, 2002, p. 3; *Barnett, supra,* 50 Cal.4th at pp. 897-898.)

Although the intent behind enactment of section 1054.9 is clear, the legislative history reveals no discussion of the scope of subdivision (d) or any attempt to define "actual costs." As the People acknowledge, nothing in the legislative history suggests lawmakers were concerned about costs related to the People's examination of discovery materials in preparation for production. Although both the Attorney General and the California District Attorneys Association initially opposed the bill, their opposition was

---

[3]    We take judicial notice of  legislative history materials provided by the People as they request, as well as of other legislative history materials cited herein. (Evid. Code, § 452, subd. (c).)

15

primarily related to potential file maintenance costs, not production costs.[4] The Attorney General did not oppose the bill on the ground it placed an unreasonable burden on law enforcement or any prosecuting agency for the costs of producing discovery materials.

The People point out that Senate Bill No. 1391 was amended during the enactment process to add section 4, which provided that if the Commission on State Mandates determined the bill contained state mandated costs, reimbursement could be made to local agencies. (Assem. Amend. to Sen. Bill No. 1391 (2001-2002 Reg. Sess.) Aug. 23, 2002, § 4, p. 7.) They contend section 4 was intended to provide funding for storage costs arising from section 1054.9. They infer that because the Legislature provided for the "cost-burden placed upon prosecution and law enforcement agencies relating to the *storage* of discovery materials," it must have intended that defendants "bear the burden of the service and the product of examination or copying." But this conclusion does not follow from the premise. Even if section 4 was meant to fund document storage,[5] it

---

[4]     Among other things, the Attorney General expressed concern that because the bill contained no time limitations and was not initially limited to persons sentenced to death or life without the possibility of parole, the legislation would unreasonably burden prosecutorial and law enforcement agencies by requiring maintenance of files and evidence indefinitely, even after a defendant had been discharged from custody. (See *Catlin v. Superior Court, supra,* 51 Cal.4th at pp. 305-306; Deputy Director Les Kleinberg, Atty. Gen. Office of Legis. Affairs, letter to Sen. John Burton, Apr. 17, 2002 [with copy to Sen. Com. on Public Safety]; Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001-2002 Reg. Sess.) as amended Apr. 10, 2002, p. 4; Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1391 (2001-2002 Reg. Sess.) as amended Apr. 10, 2002, p. 4; Cal. District Attorneys Assn., letter to Sen. John Burton, Apr. 18, 2002.)

[5]     It is not clear that section 4 of the amended bill was directed at storage costs. In addition to amending section 1054.9, the August 23, 2002 amendments changed the sunset date for section 1417.9, regarding retention of biological material. The Legislative Counsel's digest stated that Senate Bill No. 1391 imposed a state-mandated local program by "authorizing the court to require local agencies to provide access to physical evidence under certain circumstances" and by "requiring local authorities to maintain DNA evidence that would otherwise be subject to disposal after January 1, 2003." (Legis. Counsel's Dig., Sen. Bill No. 1391 (2001-2002 Reg. Sess.) as amended Aug. 23, 2002, pp. 1, 2.)

16

simply does not follow that the Legislature must have intended to impose costs related to production on defendants.

Further, an enrolled bill report prepared by the Department of Finance opined: "By requiring law enforcement agencies and prosecuting entities, such as city or district attorneys, to provide defendants with access to discovery materials in their possession, this bill would result in a state-mandated local program. However this mandate would not be reimbursable because it would also require the defendant to pay for the costs of examination or copying of the materials. The local agencies affected by this bill would be authorized to levy service charges sufficient to pay for the mandated program in the bill." (Cal. Dept. of Finance, Enrolled Bill Rep. on Sen. Bill No. 1391 (2001-2002 Reg. Sess.) as amended Aug. 26, 2002, p. 2.) The report further noted that "any claim for reimbursement of state-mandated local costs must exceed $200 per affected local entity per year, and it is unlikely any costs imposed by this provision would meet this threshold."[6] (*Ibid.*) It is unlikely the costs of copying or "service charges" were intended to cover time spent examining documents in preparation for production if such costs were expected to total under $200 per agency, per year.

Thus, nothing in the legislative history alters the conclusion that the plain language of section 1054.9, subdivision (d) does not encompass costs associated with the People's examination and preparation of discovery materials. Neither does the legislative history expressly suggest what "actual costs" of "copying" was meant to cover.

(ii) *The statutory scheme*

Examining section 1054.9 in the context of the statutory scheme of which it is a part (*Catlin v. Superior Court, supra,* 51 Cal.4th at p. 304) is also of limited utility.

---

[6] The California Constitution provides that whenever the state mandates a new program or higher level of service upon a local government, the state is required to provide a subvention of funds to reimburse the local government for the costs of the mandated program or increased service. (Cal. Const., art. XIII B, § 6, subd. (a); *California School Bds. Assn. v. Brown* (2011) 192 Cal.App.4th 1507, 1511.) The $200 threshold referenced in the Enrolled Bill Report was increased to $1,000 in 2002. (See Gov. Code, § 17564, subd. (a); Stats. 2002, ch. 1124, § 30.9.)

17

California's reciprocal pretrial discovery statutes, section 1054 et seq., were enacted in 1990 by Proposition 115. (*Pearson, supra,* 48 Cal.4th at p. 567.) They provide the exclusive means for court-ordered pretrial discovery in criminal cases.[7] (§§ 1054, subd. (e); 1054.5, subd. (a); 1054.1; *Pearson*, *supra,* at p. 571; *Roland v. Superior Court* (2004) 124 Cal.App.4th 154, 161.) Section 1054.9 is contained in part 2, title 6, chapter 10 of the Penal Code, the same chapter as the pretrial discovery provisions enacted by Proposition 115. Of the provisions contained in chapter 10, only section 1054.9 provides for postconviction discovery, and with one exception not relevant here, it is also the only statute in the chapter that expressly addresses payment for discovery-related costs.[8]

Section 1054.1, which governs *pretrial* discovery, requires that the prosecution disclose certain materials and information to the defendant or his or her counsel. The People comply with this obligation by affording a defendant the opportunity to examine, inspect or copy discoverable items. (*Schaffer v. Superior Court, supra,* 185 Cal.App.4th at pp. 1237-1238, 1244-1245.) Although section 1054.1 is silent on the question of costs, if a nonindigent defendant preparing for trial requests that the prosecution provide him or her with copies of pretrial discovery, the People may charge the defendant a reasonable duplication fee. (*Schaffer, supra,* at p. 1245.)

Rubio argues that because under section 1054.1, the pretrial analogue to section 1054.9, a defendant is responsible only for reasonable per-page duplication fees, to harmonize the two provisions, the same must be true for section 1054.9. Because section 1054.9 entitles a defendant to materials to which he would have been entitled at trial, Rubio urges, the statute requires that trial counsel and postconviction counsel be "placed

---

[7] There is no general constitutional right to discovery in a criminal case, although the Fourteenth Amendment compels disclosure to the defendant of material exculpatory evidence. (*In re Steele, supra,* 32 Cal.4th at p. 695; *People v. Valdez* (2012) 55 Cal.4th 82, 109-110; *Schaffer v. Superior Court* (2010) 185 Cal.App.4th 1235, 1243; *Brady v. Maryland* (1963) 373 U.S. 83, 87.)

[8] Section 1054.3, subdivision (b)(1)(A) provides that the prosecution shall bear the cost of a prosecution-retained mental health expert's fees when a defendant places his or her mental state at issue.

in the same position." He contends it is "unimaginable given the purpose of [section] 1054.9 – to provide postconviction access to the discovery available at trial – that the [L]egislature intended that those challenging their death sentences pay more for their access to materials to which they would have been entitled at the time of trial."

But the two provisions need not be read identically. The statutory language is different: section 1054.9 expressly provides that the defendant shall bear or reimburse the actual costs of copying, whereas section 1054.1 is silent on the question of costs. Moreover, there are significant differences between pretrial and posttrial discovery. Section 1054.9 permits postconviction discovery when the defendant is preparing a habeas corpus petition. "A habeas corpus matter has long been considered a separate matter from the criminal case itself." (*Pearson, supra,* 48 Cal.4th at p. 572.) Discovery pursuant to section 1054.9 is "part of the prosecution of the habeas corpus matter, not part of the underlying criminal case." (*Pearson, supra,* at p. 572.) As our Supreme Court has explained: "Proposition 115's discovery provisions all deal with the underlying trial. For this reason, we have held that they do not apply to habeas corpus matters (although they may provide guidance in crafting discovery orders on habeas corpus). [Citation.] Indeed, Proposition 115's discovery provisions are a bad fit for habeas corpus. The issue on habeas corpus is not defendant's guilt or innocence or the appropriate punishment but whether the defendant . . . can establish some basis for overturning the underlying judgment." (*Ibid*.) Section 1054.9 "addresses an area that is *related* to Proposition 115's discovery provisions but, crucially, it is also a *distinct* area." (*Pearson, supra,* at p. 573.) Given the differences in context and statutory language, we are not persuaded that the two provisions must be read identically.

The People argue the inclusion of the cost provision in section 1054.9, subdivision (d), unique among the discovery provisions in the chapter, along with subdivision (d)'s language that the actual costs of examination or copying "pursuant to this section" shall be borne or reimbursed by the defendant, indicates a legislative intent to impose a greater burden on postconviction petitioners than on defendants prior to trial. That may well be so, but the People's further inference – that this greater burden is the cost of the service,

19

i.e., the costs associated with preparing documents for production – is a logical leap unwarranted by the statutory language.

(iii) *Other statutes*

Both the People and Rubio analogize to other statutes in attempts to support their respective positions. Rubio argues that "no discovery statute has been interpreted to require that a person requesting information pay for the salary and benefits of an employee responding to a request." Citing *North County Parents Organization v. Department of Education* (1994) 23 Cal.App.4th 144 (*North County*), he argues that under the California Public Records Act (CPRA), a person requesting records "may only be charged the direct cost of duplication, excluding staff time involved in searching, reviewing, and redacting exempt information." (See *Fredericks v. Superior Court, supra,* 233 Cal.App.4th at p. 236 ["Generally, the ancillary costs of retrieving, inspecting, and handling material to be prepared for disclosure may not be charged" to a CPRA requestor].) Rubio urges that a death row inmate should not be charged more for documents than a member of the public, who potentially seeks public records out of idle curiosity. The People counter that the CPRA has, in fact, been interpreted to allow a charge for labor expended by county employees to locate, retrieve, and refile requested records. They also point out that pursuant to Evidence Code section 1563, records custodians may charge for reasonable clerical costs incurred in locating and making records available. In the People's view, charging Rubio for staff time expended in preparing the response to his postconviction discovery request is "in complete harmony with the cost provisions surrounding the CPRA."

These arguments are of limited utility, however, because the cited authorities do not contain the same language as does section 1054.9. In *North County,* the California Department of Education (Department) sought to charge its "full cost" of providing copies of public documents requested pursuant to the CPRA. (*North County, supra,* 23 Cal.App.4th at p. 146.) The CPRA provision applicable at the time, former section 6257 of the Government Code, provided for a charge of either the " 'direct costs of duplication,' " or a statutory fee. (*North County, supra,* at pp. 146-147.) No applicable

20

statutory fee existed.  (*Id.* at p. 147.)  The Department nonetheless charged the requesting party for not only the cost of duplication, but also for the "staff time involved in searching the records, reviewing records for information exempt from disclosure under law, and deleting such exempt information."  (*Id.* at p. 146.)  A divided appellate panel held this was impermissible.  "Duplicate" meant "make a copy," and therefore the cost chargeable for furnishing the copies was "the cost of copying them."  (*Id.* at p. 147.) *North County* reasoned that the Legislature's use of the phrase "direct costs" obviously excluded indirect costs of duplication, such as those related to searching and reviewing the records.  (*Ibid.*)  This conclusion was bolstered by the fact the language of former Government Code section 6257 had been narrowed over time.  (*North County,* at pp. 147-148.)  Whereas prior versions of the provision – allowing for a " 'reasonable fee' or the 'actual cost of providing the copy' could be interpreted to include the cost of all the various tasks associated with locating and pulling the file, excising material, etc.," the direct cost did "not include the ancillary tasks necessarily associated with the retrieval, inspection and handling of the file from which the copy is extracted."  (*Id.* at p. 148.) Instead, the "direct cost of duplication" was "the cost of running the copy machine, and conceivably also the expense of the person operating it."  (*Ibid.*)

Analogies to the CPRA provide little assistance in interpreting section 1054.9, subdivision (d), however.  The statutory language at issue in *North County*, as well as in the currently applicable CPRA provision, Government Code section 6253, subdivision (b) – "direct costs of duplication" – is distinct from, and narrower than, the "actual costs" phrasing employed in section 1054.9.

The People's citations to the Los Angeles County Code and an opinion of the Attorney General regarding CPRA requests are no more helpful.  (L.A. County Code, § 2.170.010; 85 Ops.Cal.Atty.Gen. 225 (2002).)  Los Angeles County Code section 2.170.010 requires that when a CPRA request does not reasonably describe an identifiable record, the requestor shall be charged a fee of $22.50 for each hour of time, after the first hour, expended by county employees to locate, retrieve and refile records.

21

(L.A. County Code, § 2.170.010, subds. (B), (C).)[9] In the cited opinion, the Attorney General concluded that Government Code section 54985 provided statutory authority for a county board of supervisors to charge a fee for copies of public records that exceeded the amount authorized by the CPRA. (85 Ops.Cal.Atty.Gen., *supra,* at pp. 225-227.) Government Code section 54985 provides that when a county is the local agency imposing fees, its board of supervisors has the authority to increase those fees in an amount reasonably necessary to recover the cost of providing any product or service, notwithstanding any other provision prescribing or limiting the amount of the fee. (Gov. Code, § 54985, subd. (a); see *County of Orange v. Barratt American, Inc.* (2007) 150 Cal.App.4th 420, 423.) But any analogy to these authorities is strained. The instant matter does not involve application of either Government Code section 54985 or the county code section. That Government Code section 54985 gives a county board of supervisors authority to increase charges for CPRA requests under certain circumstances does not shed light on the issue before us, that is, proper interpretation of the language of section 1054.9.

The People further point to Evidence Code section 1563, which provides that nonparty witnesses in a civil proceeding are entitled to recover not only the cost of

---

[9] Los Angeles County Code section 2.170.010 provides in pertinent part: "A. Whenever a request for copies of county records reasonably describes an identifiable record subject to disclosure, that record shall be provided to the requestor in accordance with the California Public Records Act for a fee which covers the direct costs of duplication as determined by the auditor-controller. [¶] B. Whenever a request for copies of county records subject to disclosure describes the records sought by listing categories of records related to a particular matter, issue or subject, or otherwise does not reasonably describe an identifiable record, the requestor shall reimburse the county for the costs incurred by the county in responding to the request as set forth in subsection C of this section. [¶] C. For requests for county records as described in subsection B of this section, the requestor shall be charged a fee for the actual duplication of the records which is the same as that set forth for the records described in subsection A of this section. In addition, the requestor shall be charged a fee of $22.50 for each hour of time expended by county employees to locate, retrieve and refile such records; provided, however, the first full hour of such time expended on all requests of any one requestor each month, shall be provided free of charge."

duplicating a subpoenaed business record, but also the "reasonable clerical costs incurred in locating and making the records available . . . ." (Evid. Code, § 1563, subd. (b)(1).) They aver that the District Attorney's office is akin to a third party records custodian for purposes of section 1054.9 postconviction discovery, and therefore, "just as Evidence Code section 1563 expressly provides for access to third-party-maintained business records upon payment of 'reasonable clerical costs,' section 1054.9 expressly provides for access to third-party-maintained discovery materials upon payment of the 'actual costs' " of examination or copying.

Apart from the question of whether the People's "third party witness" analogy is well-taken, this argument fails to persuade. Evidence Code section 1563, subdivision (b)(1), defines in detail the meaning of "reasonable cost."[10] No similar definition of "actual costs" of copying is present in section 1054.9. To the extent Evidence Code section 1563 is relevant at all, it illustrates that when the Legislature wishes to require reimbursement for clerical or other costs beyond the price of duplication, it knows how to do so. That it failed to provide further definition in section 1054.9 suggests it did not intend "actual costs" to include staff time spent examining records.

---

**10**    Evidence Code section 1563 provides, in pertinent part: "(b) All reasonable costs incurred in a civil proceeding by any witness which is not a party with respect to the production of all or any part of business records the production of which is requested pursuant to a subpoena duces tecum may be charged against the party serving the subpoena duces tecum. [¶] (1) 'Reasonable cost,' as used in this section, shall include, but not be limited to, the following specific costs: ten cents ($0.10) per page for standard reproduction of documents of a size 8 1/2 by 14 inches or less; twenty cents ($0.20) per page for copying of documents from microfilm; actual costs for the reproduction of oversize documents or the reproduction of documents requiring special processing which are made in response to a subpoena; reasonable clerical costs incurred in locating and making the records available to be billed at the maximum rate of twenty-four dollars ($24) per hour per person, computed on the basis of six dollars ($6) per quarter hour or fraction thereof; actual postage charges; and the actual cost, if any, charged to the witness by a third person for the retrieval and return of records held offsite by that third person."

23

(iv)  *Conclusions*

The meaning of "actual costs" of copying, as used in section 1054.9, is not readily ascertainable.  In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent.  (*Los Angeles Unified School Dist. v. Superior Court, supra,* 151 Cal.App.4th at p. 768.)  We conclude the plain language of the statute, the limited legislative history, and policy considerations support the conclusion that the actual costs of copying do not encompass costs related to examining, redacting, and preparing documents for production in response to a section 1054.9 request.  However, "actual costs" does include the labor cost of the employee who actually copies items or transfers them to electronic media, as well as a proportional share of equipment costs and the cost of the "product" itself – for example, the ink, paper, or compact disc.

First, as we have explained *ante,* "examination," as used in section 1054.9, subdivision (d), does not refer to the People's examination of discovery materials.  The plain and ordinary meaning of "copying," the relevant term, is duplication.  (*Catlin v. Superior Court, supra*, 51 Cal.4th at p. 304 [we must give the words of a statute their ordinary and usual meaning]; *North County, supra,* 23 Cal.App.4th at p. 147 [duplicate means to make a copy].)  "Copying" is simply not a synonym for locating, examining, redacting, or producing.  Moreover, if a paralegal spends time examining hundreds of documents that are ultimately *not* produced, he or she can hardly be said to have copied such documents.  For those documents examined but not produced, there can be no cost of "copying."

Had the Legislature intended "actual costs" to include the People's activities in preparing records for copying, it would have used more specific language, as it has sometimes done in other instances.  (See Evid. Code, § 1563, subd. (b)(1) [providing for "reasonable clerical costs incurred in locating and making the records available"]; Gov. Code, § 6253.9, subd. (b) [under certain circumstances, person requesting public record that is in an electronic format "shall bear the cost of producing a copy of the record, including the cost to construct a record, and the cost of programming and

24

computer services necessary to produce a copy of the record"]; cf. *North County, supra,* 23 Cal.App.4th at p. 148 [" 'actual cost *of providing the copy*' " could be interpreted to include the tasks associated with locating and preparing materials for production], italics added.) Although the People aver that the Legislature intended to place the "cost of access" to postconviction discovery on defendants, it could have, but did not, use such language. Moreover, the Legislature's lack of attention to the issue during the enactment process suggests it did not contemplate or intend that section 1054.9, subdivision (d), has the broad scope suggested by the People. Had the Legislature intended to shift the entire cost of production to a defendant, we would have expected more consideration of the issue.

One thing that is clear from the legislative history is the Legislature's intent to enable defendants to efficiently reconstruct defense attorneys' trial files. (*Barnett, supra,* 50 Cal.4th at p. 897.) The author's statement of purpose, which was repeatedly included in various committee reports and therefore considered by the Legislature as a whole, indicated an intent to avoid the injustice when a capital or LWOP petitioner's file is incomplete, and to provide a postconviction discovery process that would avoid delay and unnecessary litigation expenditures. (See *id.* at pp. 897-898.) Withholding discovery until a petitioner pays for hours of staff time spent examining a file does not foster these objectives. To the contrary, imposing a large bill on defendants would tend to stifle postconviction requests. The People point out that an indigent client of the HCRC such as Rubio is entitled, without an order to show cause, to up to $50,000 for investigative and other expenses involved in preparation of his habeas petition, and therefore imposing the costs of document examination and preparation on him does not bar his efforts for relief. (See Gov. Code, § 68666.) Be that as it may, it is unlikely most defendants, indigent or not, have access to unlimited funds; sums paid for document examination would necessarily deplete the amounts available for other investigation or expenses.[11]

---

[11] The parties attempt to cast the issue in terms of which government agency should foot the bill for services provided to Rubio. Rubio argues that the HCRC is a state agency and part of the judicial branch (see Gov. Code, § 68661) and it "seems highly

25

The People also suggest that billing defendants for document examination and preparation costs would serve to properly circumscribe overbroad requests, focus postconviction discovery, and reel in improper fishing expeditions. We agree this is a legitimate concern. Here, for example, counsel's original discovery request was for all discovery produced by the People related to Rubio's case, and the trial court characterized Rubio's requests as a " 'fishing expedition.' " (See *Barnett, supra,* 50 Cal.4th at p. 894; *In re Steele, supra,* 32 Cal.4th at p. 695.) But the statute, as interpreted by *Barnett* and *In re Steele,* already provides for limited discovery. We do not interpret section 1054.9, subdivision (d), as a mechanism for sanctioning overbroad requests.

Nor do we think that, in most cases, postconviction discovery need be excessively burdensome for the People. Materials already provided to petitioners seeking postconviction discovery have presumably been redacted to eliminate privileged material. Given the expectation of future habeas proceedings in a capital or LWOP case, it is not too much to ask the People to maintain a file in a fashion that allows for relatively easy recovery of documents. Indeed, this case appears to present an anomaly. At the hearings below, the deputy district attorney explained that the hard copy file had been

_____

unlikely that the legislature intended the California Supreme Court – which funds court-appointed private as well as HCRC counsel representing defendants in postconviction litigation – to pay for some percentage of the operating budget of a unit within the Office of the Los Angeles County District Attorney." The People suggest that ensuring adequate representation for indigent defendants in criminal proceedings is the task of the courts, as evidenced by section 987 et seq., not the District Attorney's Office. They also argue that "by ensuring that the actual costs of complying with requests for copying or examination of materials and physical evidence items would be funded by defendants, the Legislature provided an incentive to ensure adequate staffing to meet such requests – such as the creation of LADA's discovery compliance unit." However, the issue before us is the proper interpretation of the language of section 1054.9, subdivision (d) in a manner that effectuates the Legislature's intent, not a debate about the source of funding for Rubio's habeas petition. Rubio is not seeking additional funds to cover the cost of postconviction discovery, and it is not our role to resolve this dispute by reference to which branch of government bears the cost of preparation for production. Nothing in the legislative history or statutory language suggests a legislative intent to fund the District Attorney's office via fees charged for postconviction discovery.

26

inadvertently destroyed by an outside vendor after its contents had been scanned to electronic media. The digitized file was not sequentially organized, and searching it took "hours and hours" because "it has to upload. And then it stalls, and then it uploads." These issues cannot be attributed to petitioner.

Moreover, section 1054.9 does not require that the People compile or extract information from their records in order to respond to a postconviction discovery request, a process that can prove onerous. (See generally *County of Los Angeles v. Superior Court* (1993) 18 Cal.App.4th 588, 600-601 [request for information, which would have required sheriff's department to extract and compile data from historical archives, was financially burdensome where only duplication costs were reimbursable].) Section 1054.9 limits "discovery materials" to materials in the possession of the prosecution and law enforcement authorities, to which the defendant would have been entitled at trial. (§ 1054.9, subd. (b).)

The foregoing does not mean we can ignore the Legislature's use of the adjective "actual," however. We must give meaning to every word in a statute, and avoid constructions that render words or phrases superfluous. (*In re C.H., supra,* 53 Cal.4th at p. 103; *Sierra Club v. Superior Court, supra,* 57 Cal.4th at p. 166.) When enacting section 1054.9, the Legislature did not choose the narrower language of the CPRA, "direct costs of duplication," nor did it simply use the word "costs"; it selected a broader term. Had it intended only a per page charge to apply, it could easily have so specified. The word "actual" must mean something, and in our view it includes the labor, equipment, and material costs expended in copying discovery materials. It cannot be denied that a "real" or "genuine" cost of copying is the labor cost of the employee who performs the copying. (See *North County, supra,* 23 Cal.App.4th at p. 148 [direct cost of duplication "conceivably" includes the expense of the person operating the copy machine].) Documents cannot be copied, or scanned to electronic media, without the services of such an employee, who is unavailable to perform other tasks while so engaged. To hold otherwise would be to improperly render the word "actual" superfluous.

27

Here, in calculating the hourly rate of its paralegal, the People relied upon the Los Angeles County Auditor-Controller's calculation of hourly rates. That calculation included "applicable salaries and wages, employee benefits, services and supplies, and Countywide, departmental and divisional indirect costs." Wages and benefits paid to the employee who performs the service of copying are properly considered an actual cost of copying for purposes of section 1054.9, subdivision (d). Copies cannot be made or scanned without the services of the employee who operates the copy machine, scanner, or computer. Quite obviously, that employee must be compensated for his or her services. The labor cost of the employee is, therefore, a real, genuine, "actual" cost of copying. Benefits paid to the employee are likewise a component of the employee's compensation and an "actual" cost of copying. (Cf. *Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618 [broadly construing the term "wages" to include benefits to which an employee is entitled as a part of his or her compensation]; *Pacific Caisson & Shoring, Inc. v. Bernards Bros. Inc.* (2015) 236 Cal.App.4th 1246, 1254; *Brown v. Superior Court* (2011) 199 Cal.App.4th 971, 994.) On the other hand, the "services and supplies" (if unrelated to the actual copying) and countywide "departmental and divisional indirect costs" included in the Auditor-Controller's calculation, are not. These nebulous expenses are not clearly defined. The People offer no explanation of how they directly relate to the task of copying, nor do the People provide any persuasive argument as to why such expenses fall within the purview of section 1054.9, subdivision (d). Any connection between such expenses and an employee's labors is too attenuated to qualify as actual costs of copying.

Finally, we note that costs charged to a defendant pursuant to section 1054.9, subdivision (d), must be reasonable. Section 1054.9 requires that a defendant be provided "reasonable access" to discovery materials. (§ 1054.9, subd. (a).)[12] Providing

_____

[12] The question of whether the People can insist on providing copies, for a fee, of discovery materials, as opposed to allowing a defendant to examine them, is not directly before us. Although Rubio complains that the People's refusal to allow postconviction counsel to review discovery materials is "baffling and has only increased costs," Rubio

28

copies at the defendant's request is one form of access, and therefore must be provided in a reasonable fashion. Thus, the rate charged, as well as the People's staffing choices, must be reasonable. Whether particular charges are reasonable will depend on the facts of each case, and is a matter best decided by the trial court in the first instance.

In sum, where the subject of the section 1054.9 request is paper or electronic discovery, "actual costs" of copying does not encompass costs related to examining, redacting, and preparing documents for production. However, "actual costs" does include the People's real expenditures in copying, including the media, that is, paper, ink or toner, compact discs, and the like; a proportional share of equipment costs; and the labor cost of the employee who performs the actual copying or transfer of documents to electronic media.

In light of our conclusions, we need not address Rubio's contention that the hourly rate charged was excessive, or the People's argument that Rubio has waived this issue by failing to adequately raise it below.[13] The trial court can address these concerns if they arise in the future.

---

does not seek a ruling requiring the People to allow such access. We therefore express no opinion on the question of whether section 1054.9 allows the People to insist on providing copies rather than allowing inspection.

[13]    In a footnote, Rubio contends his discovery requests are "supported by due process considerations in addition to section 1054.9." Rubio does not appear to raise this as a separate claim for relief, and the authorities he cites do not support this contention. To the extent he intends to assert a constitutional due process challenge as a separate ground for relief, his claim is waived. (See, e.g., *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482; *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4 [an argument raised in "such perfunctory fashion is waived"].)

DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing respondent superior court to vacate its order of June 1, 2015 compelling petitioner to pay $2,560.53 to the Los Angeles District Attorney's Office. The trial court is directed to recalculate the amount of reimbursement required consistently with the opinions expressed herein.

**CERTIFIED FOR PUBLICATION**

ALDRICH, J.

We concur:

EDMON, P. J.

LAVIN, J.

30